warnings accurately and fully reflecting the scope and severity of symptoms of those side effects should have been made.

32.    Defendants' had notice and knowledge as early as February 20, 2007, that their Product presented substantial and unreasonable risks, and possible death, to animals consuming the Product.  As such, said consumers' dogs and cats, including Plaintiff's dog, ABBY, were unreasonably subjected to the risk of illness or death from the consumption of Defendants' Product.

33.    Despite such knowledge, Defendants, through their officers, directors, partners and managing agents for the purpose of increasing sales and enhancing its profits, knowingly and deliberately failed to remedy the known defects of Defendants' Product in a timely manner, failed to conduct testing in a timely manner, and failed to warn the public in a timely manner, including Plaintiff, of the serious risk of illness and death occasioned by the defects inherent in Defendants' Product.

34.    Defendants and their officers, agents, partners and managers intentionally proceeded with the manufacturing, distribution, sale and marketing of Defendants' Product, knowing that the dogs and cats ingesting the Defendants' Product would be exposed to serious potential danger, in order to advance their own pecuniary interests.

35.    Defendants' conduct was wanton and willful, and displayed a conscious disregard for the safety of the Product and particularly of the damage it would cause pet owners like the SIMS, entitling these Plaintiffs to exemplary damages.

36.    Defendants acted with conscious and wanton disregard of the health and safety of Plaintiff's dog, ABBY, and Plaintiff requests an award of additional damages for the sake of example and for the purpose of punishing such entities for their conduct,

8



in an amount sufficiently large to be an example to others, and to deter Defendants and others from engaging in similar conduct in the future. The above-described wrongful conduct was done with knowledge, authorization, and ratification of officers, directors, partners and managing agents of Defendants.

37.    As a direct and proximate result of Defendants' negligence as described herein, Plaintiff SIMS sustained damages in the loss of their family pet.

## AS AND FOR A FIRST CAUSE OF ACTION SOUNDING IN STRICT PRODUCT LIABILITY - FAILURE TO WARN

38.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

39.    Defendants manufactured, marketed, distributed, and supplied Defendants' Product to distribution centers throughout the United States. As such, Defendants had a duty to warn the public, including Plaintiff, of the health risks and possible death associated with using Defendants' Product.

40.    Defendants' Product was under the exclusive control of Defendants, and was sold without adequate warnings regarding the risk of serious injury and other risks associated with its use.

41.    As a direct and proximate result of the defective condition of Defendants' Product as manufactured and/or supplied by Defendants, and as a direct and proximate result of negligence, gross negligence, willful and wanton misconduct, or other wrongdoing and actions of Defendants described herein, Plaintiff suffered damages.

42.    Upon information and belief, Defendants knew of the defective nature of Defendants' Product but continued to design, manufacture, market, and sell it so as to maximize sales and profits at the expense of animal health and safety, in knowing,



conscious, and deliberate disregard of the foreseeable harm caused by Defendants' Product and in violation of their duty to provide an accurate, adequate, and complete warning concerning the use of Defendants' Product.

43.   Defendants failed to warn the public or Plaintiff in a timely manner of the dangerous propensities of Defendants' Product, which dangers were known or should have been known to Defendants, as they were scientifically readily available.

44.   Defendants knew and intended that Defendants' Product would be distributed through the United States without any inspection for defects.

45.   Defendants also knew that veterinary clinics, pet food stores, food chains and users such as Plaintiff would rely upon the representations and warranties made by Defendants on the product labels and in other promotional and sales materials upon which the Plaintiff did so rely.

46.   As a direct and proximate result of the Defendants' distribution of the product without adequate warnings regarding the health risks to animals, the Plaintiffs suffered damage as previously alleged herein, including ascertainable economic loss, including the purchase price of Defendants' Product, out-of-pocket costs of veterinary medical tests and treatment for their dog, ABBY, out-of-pocket costs of disposal/burial fees after the death of their dog, ABBY, as well as the pecuniary value.

47.   Defendants' conduct in the packaging, warning, marketing, advertising, promotion, distribution, and sale of Defendants' pet foods, was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiffs' pets, thereby entitling Plaintiffs to punitive damages in an amount to be



determined at trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

48. The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A SECOND CAUSE OF ACTION SOUNDING IN STRICT PRODUCT LIABILITY – DEFECTIVE IN DESIGN OR MANUFACTURE

49. Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

50. Defendants were the manufacturers, sellers, distributors, marketers, and/or suppliers of Defendants' Product, which was defective and unreasonably dangerous to the Plaintiffs' pets.

51. Defendants' Product was sold, distributed, supplied, manufactured, marketed, and/or promoted by Defendants, and was expected to reach and did reach consumers without substantial change in the condition in which it was manufactured and sold by Defendants.

52. The Product was manufactured, supplied, and/or sold by Defendants and was defective in design or formulation in that when it left the hands of the manufacturers and/or sellers it was unreasonably dangerous in that its foreseeable risks exceeded the benefits associated with the designs and/or formulations of the Product.

53. Upon information and belief, Defendants actually knew of the defective nature of Defendants' Product but continued to design, manufacture, market, and sell it so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by Defendants' Product.

11



54.    At all times material to this action, the Product was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendants in a defective and unreasonably dangerous condition in ways which include, but are not limited to, one or more of the following:

a.    When placed in the stream of commerce, the Product contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting the dogs and cats of the consumers, including Plaintiff, to risks which exceeded the benefits of the Product;

b.    The Product was insufficiently tested;

c.    The Product caused serious illness, harmful side effects, and possible death that outweighed any potential utility;

d.    In light of the potential and actual risk of harm associated with ingestion of the Product by dogs and cats, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that the Product should not have been marketed, distributed or sold in that condition.

55.    At all times material to this action, the Product was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed, it was



expected to reach, and did reach, purchasers of the Product across the United States, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was sold.

56.    At all times, Plaintiff purchased the Product for its intended or reasonably foreseeable purpose.

57.    As a direct, legal proximate and producing result of the defective and unreasonably dangerous condition of the Product, Plaintiff sustained damage, for which Plaintiff is entitled to recovery.

58.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of the Product, Plaintiff's dog, ABBY, was injured in health, strength and activity and subsequently died after having suffered physical injuries.

59.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of the Product, Plaintiff's dog, ABBY, required reasonable and necessary veterinary treatment and services and incurred expenses for which Plaintiff is entitled to damages, along with the expenses of disposal/burial of the family pet.

60.    As a direct and proximate result of the design and manufacturing defects of Defendants' Product, Plaintiff suffered damages as previously alleged herein.

61.    Defendants' aforementioned conduct was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiff, including Defendants' knowingly withholding and/or misrepresenting information to the public, including Plaintiff, which information was material and relevant

13



to the harm in question, punitive damages in an amount to be determined at trial that are appropriate to punish Defendants and deter them from similar conduct in the future.

62.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A THIRD CAUSE OF ACTION, SOUNDING IN FRAUD

63.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

64.    At all material times, Defendants were engaged in the business of manufacturing, marketing, distributing, promoting, and selling Defendants' Product.

65.    Defendants made misrepresentations of material facts to, and omitted and/or concealed material facts from, Plaintiff in the advertising, marketing, distribution and sale of Defendants' Product regarding its safety and use.

66.    Defendants deliberately and intentionally misrepresented to, and omitted and/or concealed material facts from, consumers, including Plaintiff SIMS, that Defendants' Product was safe when ingested by dogs and cats.    Such misrepresentations, omissions, and concealments of facts include, but are not limited to:

a.    Failing to disclose, and/or intentionally concealing, the results of tests showing the potential health risks to dogs and cats associated with the use of Defendants' Product;

b.    Failing to include adequate warnings with Defendants' Product about the potential and actual risks and the nature, scope, severity, and duration of serious adverse effects of Defendants' Product;

14

c.    Concealing information regarding the known health risks to dogs and cats associated with Defendants' Product; and;

d.    Concealing the known incidents of illnesses and death of dogs and cats, as previously alleged herein.

67.    Defendants intentionally concealed facts known to them, as alleged herein, in order to ensure increased sales of Defendants' Product.

68.    Defendants had a duty to disclose the foregoing risks and failed to do so, despite possession of information concerning those risks. Defendants' representations that Defendants' Product was safe for its intended purpose were false, as Defendants' Product was, in fact, dangerous to the health of and ultimately fatal to Plaintiff SIMS' dog, ABBY.

69.    Defendants knew that their statements were false, knew of incidents of serious illnesses and deaths in dogs and cats, and knew that their omissions rendered their statements false or misleading.

70.    Further, Defendants failed to exercise reasonable care in ascertaining the accuracy of the information regarding the safe use of Defendants' Product, and failed to disclose that Defendants' Product caused possible death in dogs and cats, among other serious adverse effects.    Defendants also failed to exercise reasonable care in communicating the information concerning Defendants' Product to Plaintiff SIMS, and/or concealed facts that were known to Defendants.

71.    Plaintiff SIMS was not aware of the falsity of the foregoing representations, nor was Plaintiff SIMS aware that one or more material facts concerning the safety of Defendants' Product had been concealed or omitted.

15



72.    In reliance upon Defendants' misrepresentations (and the absence of disclosure of the serious health risks), Plaintiff SIMS fed Defendants' Product to their dog, ABBY. Had Plaintiff SIMS known the true facts concerning the risks associated with Defendants' Product, he would not have purchased the Product nor fed the Product to the family pet.

73.    The reliance by Plaintiff SIMS upon Defendants' misrepresentations was justified because said misrepresentations and omissions were made by individuals and entities that were in a position to know the facts concerning Defendants' Product.

74.    Plaintiff SIMS was not in a position to know the facts because Defendants aggressively promoted the use of Defendants' Product and concealed the risks associated with its use, thereby inducing Plaintiff SIMS to purchase Defendants' Product.

75.    As a direct and proximate result of Defendants' misrepresentations, and/or concealment, Plaintiffs suffered damages as previously alleged herein.

76.    Defendants' conduct in concealing material facts and making the foregoing misrepresentations, as alleged herein, was committed with conscious or reckless disregard of the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages in an amount to be determined at trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

77.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

16

## AS AND FOR A FOURTH CAUSE OF ACTION, SOUNDING IN IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AND IMPLIED WARRANTY OF MERCHANTABILITY

78.   Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

79.   Defendants manufactured, marketed, sold, and distributed Defendants' Product.

80.   At the time Defendants marketed, sold, and distributed Defendants' Product for use by Plaintiff SIMS, Defendants knew of the purpose for which Defendants' Product was intended and impliedly warranted Defendants' Product to be of merchantable quality and safe and fit for such use.

81.   Plaintiff SIMS reasonably relied on the skill, superior knowledge, and judgment of Defendants as to whether Defendants' Product was of merchantable quality and safe and fit for its intended use.

82.   Due to Defendants' wrongful conduct as alleged herein, Plaintiff SIMS could not have known about the risks and side effects associated with Defendants' Product until after ingestion by Plaintiff SIMS' dog, ABBY.

83.   Contrary to such implied warranty, Defendants' Product was not of merchantable quality and was not safe or fit for its intended use.

84.   As a direct and proximate result of Defendants' breach of implied warranty, Plaintiff SIMS. suffered damages as previously alleged herein.

85.   Defendants' aforementioned conduct was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages in an amount to be determined at

17

trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

86.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A FIFTH CAUSE OF ACTION
## SOUNDING IN BREACH OF EXPRESS WARRANTY

87.    Plaintiff repeats and incorporates herein by reference the allegations made in the above Paragraphs.

88.    Defendants expressly warranted that the Product was safe and well accepted by dogs and cats and was safe for long-term use.

89.    The Product does not conform to these express representations because the Product is not safe and has high levels of serious, life-threatening side effects.

90.    As a direct and proximate result of the breach of said warranties, Plaintiff was damaged, and he is therefore entitled to damages as described herein.

91.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A SIXTH CAUSE OF ACTION
## SOUNDING IN NEGLIGENCE

92.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

93.    Defendants owed a duty to consumers of Defendants' Product, including the Plaintiff, to use reasonable care in designing, testing, labeling, manufacturing,

18

marketing, supplying, distribution and selling Defendants' Product, including a duty to ensure that Defendants' Product did not cause the dogs and cats ingesting the Product to suffer from unreasonable, unknown, and/or dangerous side effects.

94.    Defendants failed to exercise reasonable care in warning about, designing, testing, labeling, manufacture, marketing, selling and/or distributing of Defendants' Product and breached their duties to Plaintiff in that, and not by way of limitation, they did not warn of the known risks associated with the ingestion of Defendants' Product and did not exercise an acceptable standard of care, i.e., what a reasonably prudent manufacturer or seller would have known and warned about.

95.    Moreover, the product lacked sufficient warnings of the hazards and dangers to users of said Product, and failed to provide safeguards to prevent the injuries sustained by Plaintiff's dog, ABBY.    Defendants failed to properly test Defendants' Product prior to its sale, and as a result subjected users to an unreasonable risk of injury when this Product was used as directed and recommended.

96.    Defendants additionally breached their duty and were negligent in their actions, misrepresentations, and omissions toward Plaintiff, in part, in the following ways:

    a.    Failed to exercise due care in designing, developing, and manufacturing Defendants' Product so as to avoid the aforementioned risks to individuals using these products;

    b.    Failed to include adequate warnings with Defendants' Product that would alert Plaintiff SIMS and other purchasers to its potential risks and serious side effects;

19



c.     Failed to adequately and properly test Defendants' Product before placing it on the market;

d.     Failed to conduct sufficient testing on Defendants' Product, which if properly performed, would have shown that Defendants' Product had serious side effects, including, but not limited to, death of the dog or cat;

e.     Failed to adequately warn Plaintiff that use of Defendants' Product carried a risk of other serious side effects;

f.     Failed to provide adequate post-marketing warnings or instructions after Defendants knew, or should have known, of the significant risks of ingestion by dogs and cats of Defendants' Product;

g.     Placed an unsafe product into the stream of commerce; and

h.     Was otherwise careless or negligent.

97.     Defendants knew, or should have known, that Defendants' Product caused unreasonably dangerous risks and serious side effects of which Plaintiff would not be aware. Defendants nevertheless advertised, marketed, sold and/or distributed Defendants' Product knowing of its unreasonable risks of injury.

98.     Defendants knew or should have known that consumers' dogs or cats, such as Plaintiff SIMS' dog, ABBY, would suffer injury and possible death as a result of Defendants' failure to exercise reasonable care as described above.

99.     Upon information and belief, Defendants knew or should have known of the defective nature of Defendants' Product, as set forth herein, but continued to design, manufacture, market, and sell Defendants' Product so as to maximize sales and profits

at the expense of the health and safety of the public, including Plaintiff, in conscious and/or negligent disregard of the foreseeable harm caused by Defendants' Product.

100.  Defendants failed to disclose to the Plaintiff and the general public facts known or available to them, as alleged herein, in order to ensure continued and increased sales of Defendants' Product. This failure to disclose deprived Plaintiff SIMS of the information necessary for them to weigh the true risks of purchasing Defendants' Product against the benefits.

101.  As a direct and proximate result of Plaintiff SIMS' feeding Defendants' Product to their dog, ABBY, Plaintiff SIMS' dog, ABBY, suffered serious health problems and ultimate death.

102.  By virtue of Defendants' negligence, Defendants directly, foreseeably and proximately caused Plaintiff SIMS' dog, ABBY, to suffer serious health problems and ultimate death. As a result, the imposition of punitive damages against Defendants is warranted.

103.  The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action, together with the costs and disbursements of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, the class of putative plaintiffs pray for relief, in an amount which exceeds the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005, as follows:

a.    Awarding damages including but not limited to the money expended on Defendants' defective Product, veterinary bills associated with the treatment, testing, and diagnosis resulted from ingestion of the defective Product, disposal fees after death of the pet and the pecuniary value of the pet;

b.    Awarding punitive damages to Plaintiffs;

c.    Awarding pre-judgment and post-judgment interest to Plaintiffs,

d.    Awarding the costs and expenses of this litigation to Plaintiffs,

e.    Awarding reasonable attorneys' fees and costs to Plaintiffs as provided by law; and

f.    For such further relief as this Court deems necessary, just, and proper.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in an amount to be determined upon the trial of this action, together with the costs and disbursements of this action.

22

## DEMAND FOR JURY TRIAL

The Plaintiffs demand a trial by jury on all issues so triable in this civil action.

Dated: March 21, 2007.

CHARLES RAY SIMS and PAMELA SIMS,
Plaintiffs

LUNDY & DAVIS, L.L.P.
300 N. College Ave., Suite 309
Fayetteville, AR 72701
(479) 527-3921
(479) 587-9196 (fax)
jhatfield@lundydavis.com

By: _____
Jason M. Hatfield
Ark. Bar No. 97143

Attorneys for Plaintiffs

23

116

G

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

U.S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

MAR 2 3 2007

CHRIS R. JOHNSON, CLERK

BY

DEPUTY CLERK

RICHARD SCOTT AND BARBARA     )
WIDEN, individually and          )     Case No. 07-5055
All others Persons Similarly Situated,   )
                                  )
          Plaintiffs              )
                                  )
     v.                           )
                                  )
MENU FOODS; MENU FOODS           )
INCOME FUND; MENU FOODS          )
GEN PAR LIMITED; MENU FOODS      )
LIMITED PARTNERSHIP; MENU        )
FOODS OPERATING PARTNERSHIP;     )
MENU FOODS MIDWEST CORP;         )
MENU FOODS SOUTH DAKOTA;         )
MENU FOODS, INC.; MENU FOODS     )
HOLDINGS, INC.; WAL-MART         )
STORES, INC                      )

          Defendants

## CLASS ACTION COMPLAINT

Plaintiffs Scott and Barbara Widen through their undersigned counsel, on behalf of themselves and all others similarly situated, upon both personal knowledge and information and belief, alleges as follows:

1.     This class action is brought against Defendants for negligently contaminating the pet food supply making the food unfit for animal consumption and harmful and for purposefully failing to warn consumers of the contaminated pet food. As a result of Defendant's actions, Plaintiff and other similarly situated pet owners have been damaged.

## PARTIES

2.     Plaintiffs Richard and Barbara Widen are a married couple and residents

of Benton County, Arkansas. Plaintiffs lost two cats due to the contaminated food produced, distributed, marketed, and sold by the Defendants.

3.     Defendant, Menu Foods Income Fund (Menu Foods) is an unincorporated company with its principal place of business in Ontario, Canada. It is doing business in the State of Arkansas and has availed themselves of the protections of the State of Arkansas. Jurisdiction is appropriate pursuant to the Arkansas Long Arm Statute, Ark. Code Ann. 16-4-101 and service may be effected through the Hague convention on service abroad of judicial and extrajudicial documents and civil or commercial matters at 8 Falconer Drive, Streetsville, ON, Canada L5N 1B1.

Menu Foods Midwest Corp. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington DE. Defendant, Menu Foods Holding, Inc., is a Delaware corporation and may be served through it registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington Delaware. Menu Foods operates two manufacturing plants in the United States and distributes their pet food products throughout the entire United States including Arkansas.

Defendant, Menu Foods, Inc. is a New Jersey corporation and may be served through its registered agent for service, Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey. Upon information and belief, Defendants Menu Food Midwest Corp., Menu Foods South Dakota Inc., Menu Foods, Inc., and Menu Foods Holdings, Inc., are wholly owned subsidiaries of Menu Foods Income Fund, a business registered in and headquartered in Ontario, Canada. The above listed Defendants are hereinafter referred to collectively as "Defendants" or "Menu Foods"

4.      Defendant Wal-Mart Stores, Inc, (Wal-Mart) is a Delaware corporation headquartered in Bentonville, Arkansas that sells Menu Food products throughout their retail stores in Arkansas and throughout the United States. Wal-Mart is the single largest distributor of Menu Foods products. Plaintiffs purchased the contaminated pet food at the Wal-Mart store in Bentonville, AR. Menu Foods produced some brands of pet food exclusively for Wal-Mart under a private label agreement.

### JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(d)(2). The matter in controversy exceeds $5,000,000, is a class action and there are members of the proposed Class that are citizens of States different than at least one of the Defendants.

6.      Venue is proper in this district under 28 U.S.C. § 1391 (b) and (d). Defendant Wal-Mart is headquartered in the District. Defendant Menu Foods Income Fund is a foreign corporation headquartered outside the United States and distributes, through retailers such as Wal-Mart, the pet food products in issue in the District. Additionally, Plaintiffs purchased the tainted pet food in the District.

### FACTS

7.      Defendant, Menu Foods told the U. S. Food and Drug Administration, that they had become aware of the contamination on February 20, 2007. Menu Foods believed that the contamination came from their supplier of Wheat Gluten. Defendant, Menu Foods conducted test to determine if the contamination was harmful to pets on February 27, 2007. The results of the test resulted in death to one out of every six pets who consumed the contaminated pet food.



8.      Defendants Menu Foods and Wal-Mart did nothing to prevent the distribution of the contaminated pet food until weeks after the discovery occurred. This action, or lack thereof, permitted and caused additional harm to thousands of pet owners in Arkansas and throughout the country.

9.      Plaintiffs owned two cats that were very healthy middle aged cats. The two cats were named "Fred" and "Grinch." Plaintiffs fed the two cats "Special Kitty" cat food which was made by Menu Foods exclusively for Wal-Mart under a private label agreement.

10.      Beginning around February, 2007, Plaintiffs noticed that both cats were acting differently and had begun to lose weight. In a tragic irony, Plaintiff forced the cats to eat more of the contaminated pet food, unaware that the pet food was contaminated and the cause of the poor health.

11.      On March 18, 2007, Plaintiff was finally made aware through the media that a recall had been issued for the pet food by the Defendant, Menu Foods and that the pet food could cause kidney failure and other symptoms that were being experienced by the Plaintiffs' cats. On March 19, 2007, Plaintiffs took their cats to their veterinarian for examination. That same day, the veterinarian ran some tests and informed the Plaintiffs that both cats were suffering from kidney failure due to the consumption of the contaminated pet food. The veterinarian suggested that the only chance of survival for the cats was a very expensive procedure in which the likelihood of success was very small.

12.    The veterinarian diagnosed the kidney failure to be the result of the cats consumption of contaminated pet food. The veterinarian recommended that the Plaintiffs call a Menu Foods hotline number which she provided to the Plaintiffs. The hotline had been set up on or around March 17, 2007, nearly three weeks after Menu Foods had become aware of the problem. The veterinarian suggested that Menu Foods should pay for the expensive procedure.

13.    The Plaintiffs called the hotline number around a hundred times to determine if Menu Foods would pay for the procedure and never reached an operator or answering machine. Finally, out of desperation the Plaintiffs called another number for Menu Foods and left a message for somebody from Menu Foods to call them. The message was never returned.

14.    Around 3:30 p.m. on the afternoon of March 19, 2007, Plaintiffs made the decision that their cats could not suffer any further and euthanized the cats.

## CLASS ACTION ALLEGATIONS

15.    Plaintiffs brings all claims as class claims pursuant to Rule 23 of the Federal Rules of Civil Procedure. The requirements of Rule 23 are met with respect to the Class defined below.

16.    Plaintiffs bring their claims on their own behalf, and on behalf of the following Class:

> All persons in the United States who purchased contaminated pet food from Wal-Mart that was produced by Menu Foods.

17.    The Class is so numerous that joinder of the individual members of the proposed Class is impracticable. The Class, upon information and belief, includes millions of members.

18.    Questions of law or fact common to the Class exist as to Plaintiff and all Class Members, and these common questions predominate over any questions affecting only individual members of the Class. Among the common questions of law or fact are the following:

a.    Whether Defendants were negligent in allowing pet food products in the United States to be contaminated with a dangerous ingredient that was not safe for consumption.

b.    Whether Defendants owed a duty to pet owners by ensuring that the pet food was not contaminated with dangerous ingredients;

c.    Whether Defendants' conduct amounted to breach of such a duty;

d.    Whether Defendants' conduct was a proximate cause of Plaintiff's and the Class Members' damages;

e.    Whether Defendants are responsible for the contamination of the pet food;

f.    Whether Defendants were negligent per se;

g.    Whether Defendants are strictly liable;

h.    Whether Defendants breached their warranty of merchantability.

i.    Whether Defendants produced, marketed, distributed, and sold a defective product

j.    Whether Defendants failed to adequately warn consumers of contaminated pet food.

k.    Whether Defendants purposefully failed to adequately warn consumers of contaminated food supply for economic benefit.

l.    Whether Plaintiff and the Class Members are entitled to damages, and, if so, the proper amount of such damages; and

m.    Whether Defendants purposefully failed to adequately warn consumers of contaminated food supply for economic benefit.

## COUNT I

### Negligence

19.    Plaintiff incorporates by reference all of the allegations contained above.

20.    Defendants owed a duty to Plaintiff to ensure that the pet food was not contaminated with dangerous and harmful ingredients.

21.    Defendants breached that duty by allowing the contamination of the pet food supply with a dangerous and harmful ingredient during the approximate time of time January 2007 to March, 2007.

22.    Defendants' actions proximately caused damage to Plaintiff and the Class.

23.    Plaintiff and the Class have suffered damages by a loss of property, cost of medical bills, and cost of purchasing new, uncontaminated pet food.

## COUNT II

### Negligence Per Se

24.    Plaintiff incorporates by reference all of the allegations contained above.

25.    Defendants' acts and/or omissions as described herein constitute negligence per se.

26.    Defendants had a duty to ensure that their pet food was produced, transported, marketed, distributed, and sold in a manner consistent with governmental regulations.

27.    Defendants breached this duty in violation of regulatory standards.

28.    Such breaches directly and proximately caused damages to the Plaintiff and the Class.

29.    Plaintiff and the Class have suffered damages due to Defendants failure to conform to the United States Food and Drug Administration regulations.

## COUNT III

### Strict Liability- Defective in Design or Manufacture

30.    Plaintiff incorporates by reference all of the allegations contained above.

124

31.    Defendants placed into the stream of commerce an unreasonably dangerous product that is not fit for consumption and in violation of the Defendants Warranty of Merchantability owed to Plaintiff.

32.    As a result of Defendants' actions, Plaintiff and the Class Members have suffered significant damages.

33.    Exercise of reasonable care by the Plaintiffs and the Class members could not have eliminated the dangerous product or prevented the related injuries.

34.    Plaintiff and the Class Members have been damaged enormously, and they seek injunctive relief from further contamination, compensatory damages, punitive damages for reckless and willful conduct, attorney fees and costs, and all other proper and just relief.

## COUNT IV

### Strict Product Liability - Failure to Warn

35.    Plaintiff incorporates by reference all of the allegations contained above.

36.    Defendants placed into the stream of commerce an unreasonably dangerous product that is not fit for consumption.

37.    Defendant failed to warn Plaintiff or Class Members of the dangers on the Defendants' labels or through other means of advertising until after enormous damage had been suffered by the Plaintiffs and the Class Members.

38.    Even after Defendant became aware of the dangerous contamination of its pet food, they still refused to warn the consumers and allowed countless other consumers to purchase the contaminated pet food and suffer great harm.

125

39.    As a result of Defendants' actions, Plaintiff and the Class Members have suffered significant damages.

40.    Exercise of reasonable care by the Plaintiffs and the Class members could not have eliminated the dangerous product or prevented the related injuries.

41.    Plaintiff and the Class Members have been damaged enormously, and they seek injunctive relief from further contamination, compensatory damages, punitive damages for reckless and willful conduct, attorney fees and costs, and all other proper and just relief.

### JURY TRIAL DEMANDED

42.    Plaintiff demands a jury of twelve.

### PRAYER

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, request that he and the other Class Members have judgment entered in their favor and against Defendants, as follows:

A.    An order certifying that this action, involving Plaintiff's and the Class Members' separate and distinct claims, be maintained as a nationwide class action under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and their undersigned counsel to represent the Class;

B.    An award, for Plaintiff's and each Class Members' separate and distinct claims, of compensatory damages and pre- and post-judgment interest thereon;

C.    An award for Plaintiff's and the Class Members of punitive damages for reckless and wanton conduct;



D.    Injunctive relief to prevent further contamination of the American

pet food supply; and

E.    All other appropriate and just relief.

DATED: March 23, 2007             PATTON, ROBERTS, MCWILLIAMS
                                  & CAPSHAW, L.L.P.


                                  _____
                                  Jeremy Y. Hutchinson

                                  Jeremy Y. Hutchinson
                                  Jack Thomas Patterson II
                                  Stephens Building
                                  111 Center St., Suite 1315
                                  Little Rock, AR 72201
                                  Phone: (501) 372-3480
                                  Fax: (501) 372-3488

                                  Richard Adams
                                  James C. Wyly
                                  Sean F. Rommel
                                  PATTON, ROBERTS, MCWILLIAMS
                                  & CAPSHAW, L.L.P.
                                  Century Bank Plaza, Suite 400
                                  P.O. Box 6128
                                  Texarkana, Texas 75505-6128
                                  Phone: (903) 334-7000
                                  Fax: (903) 334-7007

                                  ATTORNEYS FOR PLAINTIFF

129

H

128

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **07 - 60428**    CIV - COHN

CHRISTINA TROIANO, Individually and On
Behalf of All Others Similarly Situated,

**JURY TRIAL DEMAND**

Plaintiff,

vs.

MENU FOODS, INC. and MENU FOODS
INCOME FUND,

Defendants.

_____/

### CLASS ACTION COMPLAINT

Plaintiff Christina Troiano ("Plaintiff"), individually and on behalf of all others similarly

situated, files this Class Action Complaint against Defendants Menu Foods, Inc., a New Jersey

Corporation and Menu Foods Income Fund, a foreign corporation (collectively "Defendants") and

alleges as follows:

### I.    INTRODUCTION

1.    This is a class action lawsuit brought on behalf of Plaintiff and others similarly

situated who purchased pet food and pet food products produced, manufactured and/or distributed by

Defendants that caused injury, illness, and/or death to Plaintiff's household pets.

2.    Defendants are the leading North American private label/contract manufacturer

of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty

retailers, and other wholesale and retail outlets, including Wal-Mart, Safeway, Kroger,

PetSmart, Inc., Giant Food, and other large retail chains, and has provided pet food

products to or for Proctor & Gamble, Inc. Defendants produce hundreds of millions of containers

of pet food annually.

3.      Defendants designed, manufactured, marketed, advertised and warranted their pet food products. In conjunction with each sale, Defendants marketed, advertised and warranted that the Products were fit for the ordinary purpose for which such goods were used – consumption by household pets – and were free from defects. Defendants produce the pet food products intending that consumers will purchase the pet food products, regardless of brand or label name, place of purchase, or the location where pets actually consume them. The pet food products were intended to be placed in the stream of commerce and distributed and offered for sale and sold to Plaintiff and purchasers in Florida and the United States and fed to their pets.

4.      Plaintiff brings this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on her own behalf and as a representative of a class of persons consisting of all persons in the United States who purchased, or incurred damages by using pet food produced manufactured and/or distributed by Defendants that was or will be recalled by the Defendants, including that produced from December 3, 2006 up to and including March 6, 2007. The pet food products referenced in this paragraph will hereinafter be referred to as the "Products."

5.      As a result of the defective Products, Plaintiff and members of the Class have suffered damages in that they have incurred substantial veterinary bills, death of pets, and purchased and/or own pet food and pet food products that they would not otherwise have bought had they known such products were defective.

6.      Defendants know and have admitted that certain of the Products produced by the Defendants between December 3, 2006 and March 6, 2007 are defective and causing injury and death to household pets, and on March 16, 2007, initiated a recall of some of the Products. Further, the Food and Drug Administration has reported that as many as one in six animals died in tests of the Products by Defendants last month after the Defendants received complaints the products were

2

poisoning pets around the country. A spokeswoman for the New York State Department of Agriculture and Markets has said that rodent poison was determined to have been mixed into the Products by Defendants.

## II.    PARTIES

7.    Plaintiff is a resident of Broward County, Florida who, in early March of 2007, purchased Iams Select Bytes Cat Food from a Publix grocery store in Deerfield Beach, Florida. The Iams Select Bytes Cat Food purchased by Plaintiff is a part of the group of Products that were produced, manufactured and/or distributed by Defendants.

8.    Defendant Menu Foods, Inc. is a New Jersey corporation with its principal place of business in the State of New Jersey, specifically located at 9130 Griffith Morgan Lane, Pennsauken NJ 08110.

9.    Defendant Menu Foods, Inc. is ultimately owned or controlled by Defendant Menu Foods Income Fund, an unincorporated company with its principal place of business in the Province of Ontario, Canada. Some of Defendant Menu Foods, Inc.'s high managerial officers or agents with substantial authority are also high managerial officers or agents of Defendant Menu Foods Income Fund.

10.    Plaintiff, individually and as representative of a Class of similarly situated persons more defined below, brings suit against the named Defendants for offering for sale and selling to Plaintiff and members of the Class the Products in a defective condition and thereby causing damages to Plaintiff and members of the Class.

### III. JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 and subsection (d), and the Class Action Fairness Act of 2005, Pub. L. 109-2 (Feb. 18, 2005); and over supplemental state law claims pursuant to 28 U.S.C. §1367.

12. Venue is proper in this Court and judicial district pursuant to 28 U.S.C. §1391 and/or Pub. L. 109-2 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. In this judicial district, Plaintiff purchased the recalled pet food products made by Defendants, and her household pets ate and consumed the Products. Thousands of other consumers -- including other members of the Class -- purchased the Products in this judicial district from retailers that Defendants, their agents, affiliates, or others controlled or were in privity with. In turn, retailers or others sold the Products to the general public, including Plaintiff, and members of the Class. The Products were purchased for consumption by the pets of Plaintiff and the other members of the Class. Defendants made or caused these products to be offered for sale and sold to the public, including Plaintiff.

### IV. SUBSTANTIVE ALLEGATIONS

#### Defendants and their Defective Pet Food

13. Defendants are in the business of manufacturing, producing, distributing, and/or selling pet food under various brands or labels, and/or for third party firms, including: America's Choice, Preferred Pets, Authority, Best Choice, Companion, Compliments, Demoulus Market Basket, Eukanuba, Fine Feline Cat, Food Lion, Food Town, Giant Companion, Hannaford, Hill Country Fare, Hy-Vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Nutriplan, Nutro Max Gourmet Classics, Nutro Natural Choice, Paws, Pet Pride, President's Choice, Priority, Sav-a-Lot, Schnucks, Science Diet

4

Feline Savory Cuts Cans, Sophsitacat, Special Kitty US, Springfield Prize, Sprout, Total Pet, Wegmans, Western Family, White Rose, and Winn Dixie. Defendants has manufactured or produced pet food for private labels for aproximately17 of the 20 leading retailers in the United States.

14.    Defendants' business includes manufacturing, producing, distributing, or selling dog food under various brands or labels, and/or for third party firms, including: America's Choice, Preferred Pets, Authority, Award, Best Choice, Big Bet, Big Red, Bloom, Bruiser, Cadillac, Companion, Demoulus Market Basket, Eukanuba, Food Lion, Giant Companion, Great Choice, Hannaford, Hill Country Fare, Hy-vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Mixables, Nutriplan, Nutro Max, Nutro Ultra, Nutro, Ol'Roy US, Paws, Pet Essentials, Pet Pride - Good & Meaty, President's Choice, Price Chopper, Priority, Publix, Roche Brothers, Sav-a-Lot, Schnucks, Shep Dog, Sprout, Statler Bros, Total Pet, Western Family, White Rose, Winn Dixie, and Your Pet.

15.    Defendants produce millions of pouches or containers of pet food products each year, a substantial portion of which are sold or offered for sale in Florida. Upon information and belief, Defendants have sold, either directly or indirectly, thousands of units of defective pet food and pet food products nationwide and in the State of Florida.

16.    Defendants manufactured, marketed, advertised, warranted and sold, either directly or through their authorized distribution channels, the Products that caused Plaintiff's damages. Plaintiff and members of the Class have been or will be forced to pay for damages caused by the defect in Defendants' Products.

### Factual Allegations Related to Plaintiff

17.    In early March, 2007, Plaintiff purchased Iams Select Bytes Cat Food pet food from a national chain grocery store, Publix, operating in Deerfield Beach, Florida.

18.    Over the course of the next few weeks, Plaintiff fed the cat food to her two cats, Angel and Piescat. Towards the end of that period, Plaintiff began noticing that her cats were not eating much of the Defendants' product, and that the cats were leaving large pools of urine in their litter box with little or no bowel movements.

19.    On or about March 16, 2007, Defendants announced a recall of approximately 42 brands of "cuts and gravy style dog food, all produced by the Defendants between December 3, 2006 and March 6, 2007." Defendants had initially received complaints from consumers as far back as February 20, 2007 indicating that certain of Defendants' pet food was causing kidney failure and death in dogs and cats. Unfortunately, Plaintiff and the Class were not made aware of this recall for several more days.

20.    On March 20, 2007, following another few days of unusual behavior from her cats, Plaintiff took her cats to the veterinarian. The veterinarian advised Plaintiff that both of her cats were suffering from kidney failure directly and proximately caused by the cat food. One of the Plaintiff's cats, Angel, died shortly thereafter, while the other cat, Piescat, remains at a veterinary hospital receiving treatment.

21.    Thereafter, Plaintiff learned about the recall and the potential problems that could occur from feeding the Products to her pets. Prior to the recall, Defendants never warned Plaintiff or any other member of the Class that the Products would cause their pets to have health problems. As referenced above, Defendants knew about the risks of injury or death at least one month prior to the time that Plaintiff fed the Products to her cat.

134

22.    As a result of their purchases of the Products, as set forth above, Plaintiff and other members of the Class have suffered and will suffer damages, including consequential and incidental damages, such as the loss and disability of their household pets, costs of purchasing the Products and replacing it with a safe product, including sales tax or a similar tax, costs of making an additional trip to a retail store to purchase safe, non-contaminated pet food, the price of postage to secure a refund offered by Defendants, the cost of veterinarians, treatment, medicines and the trip(s) to make such visits for diagnosis and treatment, and otherwise.

## V.    CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this action on her own behalf and as a Class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the following proposed class:

> All persons in the United States who purchased, or incurred damages by using, pet food produced or manufactured by Defendants that was or will be recalled by the Defendants, including that produced from December 3, 2006 up to and including March 6, 2007.

Upon completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the class definition. Excluded from the Class are Defendants, their parents, subsidiaries and affiliates, directors and officers, and members of their immediate families. Also excluded from the Class are the court, the Court's spouse, all persons within the third degree of relationship to the Court and its spouse, and the spouses of all such persons.[1]

24.    Numerosity: The members of the Class are so numerous and geographically diverse that joinder of all of them is impracticable. While the exact number and identities of members of the Class are unknown to Plaintiff at this time and can only be ascertained through appropriate

---

[1]    *See* Canon 3.C(3)(a) of the Code of Conduct for United States Judges.

7

discovery, Plaintiffs believe and therefore aver that there are thousands of Class members throughout the United States.

     25.    <u>Commonality</u>: There are questions of fact and law common to members of the Class that predominate over any questions affecting any individual members including, *inter alia*, the following:

         (a)    Whether Defendants sold pet food and pet food products that were recalled or subject to a recall.

         (b)    Whether Defendants advertised, represented, or held itself out as producing or manufacturing a pet food product that was safe for pets of the class members.

         (c)    Whether Defendants expressly warranted these products.

         (d)    Whether Defendants purported to disclaim any express warranty.

         (e)    Whether Defendants purported to disclaim any implied warranty.

         (f)    Whether any limitation on warranty fails to meet its essential purpose.

         (g)    Whether Defendants intended that the Products be purchased by Plaintiff, Class members, or others.

         (h)    Whether Defendants intended or foresaw that Plaintiff, class members, or others would feed the Products to their pets.

         (i)    Whether Defendants recalled the pet food products.

         (j)    Whether Defendants was negligent in manufacturing or processing the Products.

         (k)    Whether using the Products as intended - to feed their pets - resulted in loss, injury, damage, or damages to the Class.

         (l)    Whether Defendants' negligence proximately caused loss or injury to damages.

(m)    Whether Class members suffered direct losses or damages,

(n)    Whether Class members suffered indirect losses or damages.

(o)    Whether Defendants' acts or practices violated the Florida Deceptive and Unfair Trade Practices Acts.

26.    <u>Typicality</u>: Plaintiff's claims are typical of the claims of the other members of the Class in that all such claims arise out of Defendants' conduct in manufacturing, producing and entering into the stream of commerce defective pet food and pet food products, Defendants' conduct surrounding the recall of its product, and Plaintiff's and Class Members' purchase and use of Defendants' products. Plaintiff and the other members of the Class seek identical remedies under identical legal theories, and there is no antagonism or material factual variation between Plaintiff's claims and those of the Class.

27.    <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's claims are coextensive with, and not antagonistic to, the claims of the other members of the Class. Plaintiff is willing and able to vigorously prosecute this action on behalf of the Class, and Plaintiff has retained competent counsel experienced in litigation of this nature.

28.    Plaintiff brings this action under Rule 23(b)(3) because common questions of law and fact (identified in paragraph 25 above) predominate over questions of law and fact affecting individual members of the Class. Indeed, the predominant issue in this action is whether Defendants' pet food and pet food products are defective and have caused damages to Plaintiff and the members of the Class. In addition, the expense of litigating each Class member's claim individually would be so cost prohibitive as to deny Class members a viable remedy. Certification under Rule 23(b)(3) is appropriate because a class action is superior to the other available methods

9



for the fair and efficient adjudication of this action, and Plaintiff envisions no unusual difficulty in the management of this action as a class action.

29.    The undersigned counsel for Plaintiff and the Class request that the Court appoint them to serve as class counsel first on an interim basis and then on a permanent basis. Undersigned counsel will fairly and adequately represent the interests of the class, have identified or investigated the Class's potential claims, are experienced in handling class actions, other complex litigation, and consumer claims of the type asserted in the action, know the applicable law, will commit sufficient resources to represent the class, and are best able to represent the Class.

30.    Plaintiff requests this Court to certify this Class in accordance with Rule 23 and the Class Action Fairness Act of 2005.

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Breach of Implied Warranty

31.    Plaintiff hereby adopts and incorporates by reference paragraphs 1-30 as if more fully set forth herein.

32.    Defendants manufactured, marketed, sold and distributed the Products.

33.    At the time that Defendants marketed, sold, and distributed the Products, Defendants knew of the purpose for which the Products were intended and impliedly warranted that the Products were of merchantable quality and safe and fit fur such use.

34.    Plaintiff reasonably relied upon the skill, superior knowledge and judgment of the Defendants as to whether the Products were of merchantable quality and safe and fit for its intended use.



35.    Due to Defendants' wrongful conduct as alleged herein, Plaintiff could not have known about the risks and side effects associated with the Products until after ingestion by Plaintiff's cats.

36.    Contrary to such implied warranty, the Products were not of merchantable quality and were not safe or fit for their intended use.

37.    As a direct and proximate result of Defendants' breach of implied warranty, Plaintiff suffered damages as alleged herein.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants as follows:

(a)    For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and their legal counsel to represent the Class;

(b)    Awarding actual and consequential damages;

(c)    Granting injunctive relief;

(d)    For pre- and post-judgment interest to the Class, as allowed by law;

(e)    For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary and non-pecuniary benefits are obtained on behalf of the Class; and

(f)    Granting such other and further relief as is just and proper.

## SECOND CAUSE OF ACTION

### Breach of Express Warranty

38.    Plaintiff hereby adopts and incorporates by reference paragraphs 1-30 as if more fully set forth herein.

39.    Defendants expressly warranted that the Products were safe for consumption by pets.

11

40.    The Products did not conform to these express representations because the Products are not safe and cause serious side effects in pets, including death.

41.    As a direct and proximate result of the breach of said warranties, and as the direct and legal result of the defective condition of the Products as manufactured and/or supplied by Defendants, and other wrongdoing of Defendants described herein, Plaintiff was caused to suffer damages.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants as follows:

(a)    For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and their legal counsel to represent the Class;

(b)    Awarding actual and consequential damages;

(c)    Granting injunctive relief;

(d)    For pre- and post-judgment interest to the Class, as allowed by law;

(e)    For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary and non-pecuniary benefits are obtained on behalf of the Class; and

(f)    Granting such other and further relief as is just and proper.

### THIRD CAUSE OF ACTION

#### Negligence

42.    Plaintiff hereby adopts and incorporates by reference paragraphs 1-30 as if more fully set forth herein.

43.    Defendants owed Plaintiff a duty to only offer safe, non-contaminated products for consumption by household pets.

44.    Through its failure to exercise the due care, Defendants breached this duty by producing, processing, manufacturing, and offering for sale the Products in a defective condition that was unhealthy to the Plaintiff's pets.

45.    Additionally, Defendants breached their duty of care to Plaintiff by failing to use sufficient quality control, perform adequate testing, proper manufacturing, production, or processing, and failing to take sufficient measures to prevent the Products from being offered for sale, sold, or fed to pets.

46.    Defendants knew or, in the exercise of reasonable care should have known, that the Products presented an unacceptable risk to the pets of the Plaintiff, and would result in damage that was foreseeable and reasonably avoidable.

47.    As a direct and proximate result of Defendants' above-referenced negligence, Plaintiff and has suffered loss and damages.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants as follows:

(a)    For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and their legal counsel to represent the Class;

(b)    Awarding actual and consequential damages;

(c)    Granting injunctive relief;

(d)    For pre- and post-judgment interest to the Class, as allowed by law;

(e)    For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary and non-pecuniary benefits are obtained on behalf of the Class; and

(f)    Granting such other and further relief as is just and proper.

13

## FOURTH CAUSE OF ACTION

### Strict Product Liability

48.     Plaintiff hereby adopts and incorporates by reference paragraphs 1-30 as if more fully set forth herein.

49.     Defendants are producers, manufacturers and/or distributors of the Products.

50.     The Products produced, manufactured and/or distributed by Defendants were defective in design or formulation in that, when the Products left the hands of the Defendants, the foreseeable risks exceeded the benefits associated with the design or formulation.

51.     Defendants' Products were expected to and did reach the Plaintiff without substantial change in condition.

52.     Alternatively, the Products manufactured and/or supplied by Defendants were defective in design or formulation, in that, when they left the hands of the Defendants, they were unreasonably dangerous, more dangerous than an ordinary consumer would expect, and more dangerous than other pet food products without concomitant accurate information and warnings accompanying the product for the Plaintiff to rely upon.

53.     The Products produced, manufactured and/or distributed by Defendants were defective due to inadequate warning and/or inadequate testing and study, and inadequate reporting regarding the results of same.

54.     The Products produced, manufactured and/or distributed by Defendants were defective due to inadequate post-marketing warning or instruction because, after Defendants knew or should have known of the risk of injury from the Products, Defendants failed to immediately provide adequate warnings to the Plaintiff and the public.

14

55.    As the direct and legal result of the defective condition of the Products as produced, manufactured and/or distributed by Defendants, and of the negligence, carelessness, other wrongdoing and actions of Defendants described herein, Plaintiff suffered damages.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants as follows:

(a)    For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and their legal counsel to represent the Class;

(b)    Awarding actual and consequential damages;

(c)    Granting injunctive relief;

(d)    For pre- and post-judgment interest to the Class, as allowed by law;

(e)    For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary and non-pecuniary benefits are obtained on behalf of the Class; and

(f)    Granting such other and further relief as is just and proper.

### FIFTH CAUSE OF ACTION

#### Unjust Enrichment

56.    Plaintiff hereby adopts and incorporates by reference paragraphs 1-30 as if more fully set forth herein.

57.    As a direct, proximate, and foreseeable result of Defendants' acts and otherwise wrongful conduct, Plaintiff suffered damages. Defendants profited and benefited form the sale of the Products, even as the Products caused Plaintiff to incur damages.

58.    Defendants have voluntarily accepted and retained these profits and benefits, derived from consumers, including Plaintiff, with full knowledge and awareness that, as a result of

Defendants' unconscionable wrongdoing, consumers, including Plaintiff, were not receiving products of the quality, nature, fitness, or value that had been represented by Defendants or that reasonable consumers expected. Plaintiff purchased pet food that she expected would be safe and healthy for her cats and instead has had to now endure the death of one of her beloved pets and the hospitalization of the other.

59.    By virtue of the conscious wrongdoing alleged in this Complaint, Defendants have been unjustly enriched at the expense of the Plaintiff who is entitled to, and hereby seeks, the disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants as follows:

(a)    For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and her legal counsel to represent the Class;

(b)    Awarding reimbursement, restitution and disgorgement from Defendants of the benefits conferred by Plaintiff and the Class;

(c)    For pre- and post-judgment interest to the Class, as allowed by law;

(d)    For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary benefits are obtained on behalf of the Class; and

(e)    Granting such other and further relief as is just and proper.

## JURY DEMAND

Plaintiff and the Class demands a jury trial on all issues triable by a jury.

DATED: March 26, 2007

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
PAUL J. GELLER
Florida Bar No. 984795
*pgeller@lerachlaw.com*
STUART A. DAVIDSON
Florida Bar No. 84824
*sdavidson@lerachlaw.com*
JAMES L. DAVIDSON
Florida Bar No. 072371
*jdavidson@lerachlaw.com*

STUART A. DAVIDSON

120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432-4809
Telephone: 561/750-3000
561/750-3364 (fax)

KOPELMAN & BLANKMAN
LAWRENCE KOPELMAN
Florida Bar No. 288845
*lmk@kopelblank.com*
350 E. Las Olas Blvd., Suite 980
Ft. Lauderdale, FL 33301
Telephone: 954/462-6855
954/462-6899 (fax)

Attorneys for Plaintiff and the Class

I:\Pot Lit 2007\Menu Foods\Complaint FINAL.doc

17

146

KC **FILED**

MAR 3 0 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

DAWN MAJERCZYK, individually and on )
behalf of a class of similarly situated individuals, )
                              )
                   Plaintiff, )
                              )
        v. )
                              )
MENU FOODS, Inc., a New Jersey Corporation, )
                              )
                  Defendant. )
------------------------------------------------x

**07CV1543**
**JUDGE ANDERSEN**
**MAGISTRATE JUDGE NOLAN**

Jury Trial Demanded

### CLASS ACTION COMPLAINT

Plaintiff Dawn Majerczyk brings this class action complaint against defendant Menu
Foods, Inc. ("Menu Foods") to seek redress for herself and all other individuals injured by its sale
of contaminated pet food throughout the United States.

### NATURE OF THE CASE

1.    Menu Foods, one of the largest pet food manufacturers in the world, recently
issued a mass recall of 42 brands of cat food and 51 brands of dog food.

2.    That recall was issued – belatedly – as a result of evidence that the pet food in
question was contaminated with a potentially lethal agent.

3.    When ingested by an animal, the contaminated pet food can cause immediate
renal failure, resulting in the complete shutdown of the animal's kidneys and, ultimately, its
death.

4.    Menu Foods' actions in selling the contaminated food and failing to issue the
recall sooner were reckless and in breach its duties and warranties to its customers.

147

5.      Those actions were a proximate cause of injury to and the deaths of currently

untold numbers of pets, including plaintiff Dawn Majerczyk's cat, as described more fully below.

6.      On behalf of a nationwide class, Majerczyk seeks redress for that misconduct.

## PARTIES

7.      Plaintiff Dawn Majerczyk is a citizen of Illinois, residing in Cook County, Illinois.

8.      Defendant Menu Foods is the self-proclaimed "leading manufacturer of

private-label wet pet food in North America." It is a New Jersey Corporation with its principle

place of business in New Jersey. It does business throughout the United States, including Cook

County, Illinois.

## JURISDICTION

9.      The Court has original jurisdiction over this complaint pursuant to 28 U.S.C.

§ 1332(d) because (a) plaintiff and numerious members of her putative class are citizens of states

different from those of which Menu Foods is a citizen, (b) the amount in controversy exceeds

$5,000,000, exclusive of interests and costs, and (c) none of the jurisdictional exceptions

contained in 28 U.S.C. § 1332(d)(4)-(5) applies to the instant action.

## VENUE

10.     Venue is proper in this district under, *inter alia*, 28 U.S.C. §§ 1391(a)(1).

## FACTS

11.     Menu Foods holds itself out to the public as a manufacturer of safe, nutritious,

and high-quality dog and cat food.

12.     It makes numerous express warranties about the quality of its food and its

manufacturing facilities.

2

140

13.    For example, Menu Foods touts the claim that it "manufacture[s] the private-label, wet pet-food industry's most comprehensive product program with the highest standards of quality" and it operates "state-of-the-art" manufacturing facilities in the United States and Canada.

14.    Menu Foods intended for pet owners to believe its statements and trust that its pet food is of first-rate quality.

15.    On or about March 16, 2007, Menu Foods announced a recall of approximately 42 brands "cuts and gravy" style dog food and 51 brands of "cuts and gravy" style cat food, all produced at Menu Foods' facility in Emporia, Kansas, between Dec. 3, 2006, and March 6, 2007.

16.    Weeks before the recall, Menu Foods had received numerous complaints indicating that the pet food originating from the Emporia plant was killing pets.

17.    As a result of these complaint, Menu Foods tested its food on approximately 40 to 50 pets. Seven of those pets died after ingesting the food.

18.    Despite having actual knowledge of both the complaints it received and its own study, Menu Foods delayed for weeks before issuing the notice of recall.

19.    Even then, its recall was conducted in a negligent manner. For example, both its website and the toll-free telephone number it provided to the public were frequently non-operational.

## FACTS RELATING TO THE NAMED PLAINTIFF

20.    On or about March 10, 2007, Majerczyk purchased several pouches of Special Kitty Select Cuts from a Walmart store for her nine-year-old cat, Phoenix.

21.    Menu Foods is the manufacturer of Special Kitty Select Cuts.

3

22.    On March 16, 2006, shortly after ingesting Menu Food's cat food, Phoenix went into renal failure. Phoenix's kidneys shut down, and on March 17, 2007, he had to be put down.

23.    Majerczyk incurred over $300 in veterinary expenses relating to the attempts to save Phoenix's life.

24.    Phoenix had been with Majerczyk's family from birth.

25.    The loss was devasting not only to Majerczyk, but also to her seventeen-year-old son and fourteen-year-old daughter as well.

## CLASS ALLEGATIONS.

26.    Majerczyk brings this action, pursuant to FRCP 23(b)(3), on behalf of herself and a class (the "Class") consisting of herself and all others who purchased pet food in the United States that was ultimately subject to the March 16, 2007 Menu Foods recall.

27.    Upon information and belief, there are over 100,000 members of the Class such that joinder of all members is impracticable.

28.    Common questions of law and fact exist as to all members of the Class and predominate over questions affecting individual members. Common questions for the Class include:

(a)    Did Menu Foods act negligently in failing to prevent the contamination of its pet food?

(b)    Did Menu Foods act negligently in failing to warn its customers in a timely and effective manner of the danger of its pet food?

4

150