03/26/2007 13:42 FAX 916 568 7890    WEILER TORISEVA WALLACE    ☒003/017

Plaintiff Shirley Sexton ("Plaintiff"), individually and on behalf of all others similarly situated, alleges by and through her attorneys, upon information and belief, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of herself and a class of consumers and entities who purchased brands of pet food manufactured by Defendants that caused pets to suffer severe illness or death. Pet owners, believing Defendants' products to be safe for pet consumption, incurred substantial expenses relating to the purchase of the pet food and to the veterinary monitoring and treatment that became necessary after their pets consumed Defendants' pet food. Such expenses were even more extreme for those pet owners whose pets became terminally ill after consuming Defendants' pet food products. Such costs arose and were exacerbated by the undue amount of time taken by Defendants to announce the dangers associated with its dog and cat foods. Although Defendants knew that pet illnesses and deaths could be related to their pet foods, Defendants waited for nearly a month before telling the public and the Food and Drug Administration (FDA) that it was recalling its products. Defendants' lethal products, and the companies' excessive delay in warning consumers and regulatory agencies as to its dangers, resulted in significant financial loss to thousands of pet owners.

## JURISDICTION AND VENUE

2. The Court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2).

3. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a)(1) because Plaintiff resides in this judicial district. Venue is also proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

4. The members of the putative Class have suffered aggregate damages exceeding $5,000,000, exclusive of interest and costs.

## PARTIES

5. Plaintiff Shirley Sexton is a resident of Los Angeles County, California.

6. Defendant Menu Foods Income Fund is a Canadian company with its principal executive offices located at 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

7. Defendant Menu Foods, Inc. is a New Jersey corporation with its principal executive offices located at 9130 Griffith Morgan Lane, Pennsauken, New Jersey 08110.

8. Defendant Menu Foods Midwest Corporation is a Delaware corporation with its principal executive offices located at P.O. Box 1046, 1400 East Logan Avenue, Emporia, Kansas 66801. Menu Foods Midwest Corporation is a wholly-owned subsidiary of Menu Foods, Inc.

9. Unless otherwise stated, Defendants Menu Foods Income Fund, Menu Foods, Inc., and Menu Foods Midwest Corporation are collectively referenced as "Defendants."

10. At all times herein mentioned, Defendants were the agents, principals, employees, servants, partners, joint venturers, and representatives of each other. In doing the acts hereinafter alleged, they each were acting within the scope and course of their authority as such agents, principals, employees, servants, partners, joint venturers, and representatives, and were acting with the permission and consent of the other Defendant.

## FACTUAL ALLEGATIONS

11. Defendants manufacture and sell pet food internationally and are the biggest supplier of pet food in North America.

12. Defendants sell pet food under nearly 100 different brand names, some of which are the most popular brands of dog and cat food in the industry – e.g., Iams, Eukanuba, Science Diet, among others.

13. Defendants sell their brands internationally and in some of the largest

-3-
CLASS ACTION COMPLAINT

03/26/2007   13:43   916 568 7890
03/26/2007 13:43 FAX  916 568 7890         WEXLER TORISEVA WALLACE                    ☒005/017

1  major retail chains in the United States, such as Wal-Mart, Safeway, Kroger,
2  PetSmart and Meijer.
3     14. On March 16, 2007, Defendants, in conjunction with the Food and Drug
4  Administration (FDA), announced a massive immediate recall of approximately 60
5  million containers of "cuts and gravy" pet food (pet food consisting of pieces of
6  meat in gravy) throughout the United States based on widespread reports of pet
7  illness and death, mostly related to kidney failure. The recall covers all "cuts and
8  gravy" wc pet food produced and distributed by Defendants, including over ninety
9  different brands of dog and cat food. Some of the brands recalled include, Iams,
10 Eukanuba, Best Choice, Paws, and Nutro Max. Defendants' recall is the largest pet
11 food recall in United States history.
12    15. However, Defendants waited an excessive period of time before deciding
13 to recall its harmful and lethal products. Defendants first started receiving
14 complaints of pet illnesses and deaths as early as late-February, almost a full month
15 before deciding to recall its products. *See, e.g.*, CBSNews.com, *Pet Food Co.*
16 *Knew of Problem Last Month*, March 20, 2007, *at*
17 http://www.cbsnews.com/stories/2007/03/20/national/main2587087.shtml (last
18 viewed March 22, 2007). Rather than announcing its products could be harmful to
19 pets as soon as it learned of pet illnesses and deaths, Defendants decided to conduct
20 its own testing. Defendants conducted tests involving over 50 animals to observe
21 reactions to its pet foods. Approximately one in six of the animals tested died. Yet,
22 Defendants again waited until as many as seven test subjects died after eating its pet
23 food before finally submitting its findings to the FDA and deciding that a recall and
24 announcement to the public would be necessary.
25    16. Due in no small part to this unnecessary and protracted delay, as of
26 March 21, 2007 there have been at least seventy-two reported pet deaths from
27 kidney failure nationwide and additional deaths continue to be reported by the hour.
28 One source indicated that 1,715 dogs and cats were either sick or dead as a result of

03/26/2007  13:43    916 568 7890
03/26/2007 13:43 FAX 916 568 7890         WEXLER TORISEVA WALLACE                    ☐006/017

1  the recalled food products. *See* http://www.petconnection.com/blog/ (last viewed
2  March 22, 2007).
3      17. Pet owners purchased Defendants' products believing them to be safe for
4  pet consumption and beneficial to their pets. However, the "cuts and gravy" style
5  pet food that pet owners across the nation have fed their pets has proved to be toxic,
6  causing renal failure in cats and dogs as well as physical disorders such as
7  dehydration, diarrhea, loss of appetite, increased thirst, lethargy, and vomiting.
8      18. Pet owners have incurred substantial expenses relating both to the
9  purchase of Defendants' pet food and from the medical costs associated with
10 monitoring and treating pets who have consumed, or were thought to have
11 consumed, Defendants' contaminated food products. Indeed, several pet owners
12 have accrued veterinary bills that have climbed into the several thousands of
13 dollars. Furthermore, for those pet owners whose pets became terminally ill, they
14 were forced to incur additional costs relating to their pets death, such as euthanizing
15 and, for some, burying or cremating their pet.
16     19. Currently, Defendants still have not identified the cause of the food
17 toxicity. However, aminopterin, a substance found in rat poisons, was recently
18 discovered in the recalled foods.
19     20. In addition, pet owners who have become increasingly concerned about
20 their pet's health after learning of the recall have received little to no relief from
21 Defendants. Defendants have failed to manage the high volume of incoming
22 complaints. Since instituting the recall, pet owners have been largely unable to
23 reach Defendants' customer service representatives, often encountering busy
24 signals or voicemail messages. *See, e.g.*, Thejournalnews.com, *Pet Owners*
25 *Growling over Food Recall*, March 20, 2007, *at*
26 http://www.thejournalnews.com/apps/pbcs.dll/article?AID=/20070320/BUSINESS
27 01/703200345/1066 (last viewed March 22, 2007). To be sure, Defendants have
28 been criticized for not being cooperative with customers, for not getting helpful

03/26/2007 13:43  916 568 7890
03/26/2007 13:43 FAX  916 568 7890        WEILER TORISEVA WALLACE                    ☒007/017

information out to the public sooner and for failing to "get control of the crisis . . . employ[ing] a bunker mentality in times of trouble." Joseph R. Perone, The Star-Ledger, *Menu Foods Fails Test in Crisis Management*, March 21, 2007, *available at* http://www.nj.com/starledger/stories/index.ssf?/base/business-6/1174455547849080.xml&coll=1 (last viewed March 23, 2007).

21. Since the recall, Defendants have received scores of complaints and questions from consumers who have purchased its contaminated pet food products and from those whose pets have become ill or died after consuming those products.

22. The complaints found throughout the Internet and in many of the news stories mentioned above each contain the same common theme of consumers who unwittingly purchased Defendants' food products and who were forced to take their pets to veterinarians for medical treatment after their pets became extremely, and sometimes terminally ill.

23. Plaintiff Shirley Sexton regularly purchased *Special Kitty* brand wet pet food from Wal-Mart Stores, Inc. before the recall was announced.

24. Four cats lived in Ms. Sexton's household. Two of Ms. Sexton's three cats, Red and Kelso, ate the *Special Kitty* pet food every day. Spike, a cat belonging to Ms. Sexton's daughter, also ate *Special Kitty* pet food on a daily basis.

25. On or March 16 and March 17, 2007, Shirley noticed that both Red and Kelso were ill. She took Red and her two other cats in to the veterinarian. Two of the three cats, including Kelso, were initially found to be healthy. However, the veterinarian discovered Red had kidney failure and decided to keep Red overnight. On March 20, 2007, the veterinarian determined that Red's condition had significantly worsened and Ms. Sexton, in order to spare her pet from suffering any further, made the decision to have Red euthanized that same day.

26. After her experience with Red, Ms. Sexton also brought her daughter's cat, Spike, to the veterinarian for testing. The veterinarian determined that Spike – who also ate Wal-Mart's *Special Kitty* brand food – was suffering from kidney

03/26/2007 13:44  916 568 7890
03/26/2007 13:44 FAX  916 568 7890        WEILER TORISEVA WALLACE                    ☐008/017

1 failure. As of the date of this complaint, Spike remains in the veterinary hospital.

2     27. To date, Ms. Sexton has incurred at least $1,100 in veterinary bills.

### CLASS ACTION ALLEGATIONS

28. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b) on behalf of herself and all others similarly situated as members of the following class (the "Class"): All persons and entities that purchased "cuts and gravy" style dog or cat food manufactured, distributed, marketed and/or sold by Defendants.

29. Subject to additional information obtained through further investigation and discovery, the Class definition may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the proposed Class are business entities for purposes of Plaintiff's claim for relief under the California Consumers Legal Remedies Act, Civil Code § 1750, *et seq*. Also specifically excluded are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

30. **Numerosity**. The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed class contains tens of thousands of members. The precise number of Class members is unknown to Plaintiff. The true number of Class members are known by Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

31. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class and

03/26/2007  13:44   916 568 7890
03/26/2007 13:44 FAX  916 568 7890         WEILER TORISEVA WALLACE                    ☒009/017

predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

   a. Whether Defendants intentionally, recklessly or negligently authorized injurious pet food to enter the market;

   b. Whether Defendants failed to properly test their "cuts and gravy" style dog and cat food before market entry of such food;

   c. Whether Defendants intentionally, recklessly or negligently delayed in instituting a recall of its "cuts and gravy" style dog and cat food;

   d. Whether Defendants' recall is adequate and properly notifies potentially affected consumers;

   e. Whether Defendants' conduct constituted unlawful, unfair, or fraudulent business practices in violation of Cal. Bus. & Prof. Code §§ 17200, et seq., as alleged herein;

   f. Whether Defendants have been unjustly enriched as a result of their conduct, as alleged herein;

   g. Whether Plaintiff and members of the Class have sustained damages as a result of Defendants' conduct, and, if so, what is the appropriate measure of damages; and

   h. Whether Plaintiff and members of the Class are entitled to punitive damages, and, if so, in what amount.

32. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff and each member of the Class purchased "cuts and gravy" style dog or cat food manufactured, distributed, marketed and/or sold by Defendants.

33. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests

-8-
CLASS ACTION COMPLAINT

03/26/2007  13:44     916 568 7890
03/26/2007 13:44 FAX  916 568 7890         WEILER TORISEVA WALLACE                    ⌀010/017

1  to those of the Class.

2      34. **Superiority**. A class action is superior to all other available means for
3  the fair and efficient adjudication of this controversy. The damages or other
4  financial detriment suffered by individual Class members is relatively small
5  compared to the burden and expense that would be entailed by individual litigation
6  of their claims against the Defendants. It would thus be virtually impossible for
7  Class, on an individual basis, to obtain effective redress for the wrongs done to
8  them. Furthermore, even if Class members could afford such individualized
9  litigation, the court system could not. Individualized litigation would create the
10 danger of inconsistent or contradictory judgments arising from the same set of facts.
11 Individualized litigation would also increase the delay and expense to all parties
12 and the court system from the issues raised by this action. By contrast, the class
13 action device provides the benefits of adjudication of these issues in a single
14 proceeding, economies of scale, and comprehensive supervision by a single court,
15 and presents no unusual management difficulties under the circumstances here.

16     35. In the alternative, the Class may be certified because:

17     a. the prosecution of separate actions by individual Class members
18        would create a risk of inconsistent or varying adjudication with respect
19        to individual Class members that would establish incompatible
20        standards of conduct for the Defendants;

21     b. the prosecution of separate actions by individual Class members would
22        create a risk of adjudications with respect to them that would, as a
23        practical matter, be dispositive of the interests of other Class members
24        not parties to the adjudications, or substantially impair or impede their
25        ability to protect their interests; and/or

26     c. Defendants have acted or refused to act on grounds generally
27        applicable to the Class thereby making appropriate final and injunctive
28        relief with respect to the members of the Class as a whole.

03/26/2007 13:44 916 568 7890
03/26/2007 13:44 FAX 916 568 7890   WEILER TORISEVA WALLACE   ☒011/017

36. Adequate notice can be given to Class members directly using information maintained in Defendants' records, or through publication notice.

37. Defendants benefited from the sale of its "cuts and gravy" style dog and cat food to Plaintiff and the Class. The benefit to Defendants can be identified from the sale of such pet food to Plaintiff and the Class and that such monies can be restored to Plaintiff and the Class. Such monies are the property of the Plaintiff and the Class. All or a portion of this benefit retained by Defendants is money in which Plaintiff and the Class have an ownership interest. Plaintiff and the Class were injured and lost money as a result of Defendants' unfair, unlawful and fraudulent business practices described herein.

## FIRST CLAIM FOR RELIEF
[Violation of Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*]

38. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein. Plaintiff asserts this claim against each and every Defendant on behalf of herself and the Class.

39. Defendants are each a "person" as defined by Cal. Civ. Code § 1761(c).

40. Plaintiff and the proposed Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

41. Plaintiff's purchase of dog and cat food manufactured, distributed, marketed and sold by Defendants constitute "transactions" within the meaning of Civil Code section 1761(e) and 1770.

42. Defendants' conduct violated and continues to violate the CLRA in at least the following respects:

   a. In violation of Section 1770(a)(1) of the CLRA, Defendants misrepresented the source, sponsorship, approval or certification of goods or services; and

03/26/2007 13:44 916 568 7890
03/26/2007 13:45 FAX 916 568 7890         WEXLER TORISEVA WALLACE                    ☒012/017

  b. In violation of Section 1770(a)(5) of the CLRA, Defendants represented that its goods or services sponsorship, approval, characteristics, uses or benefits which they do not have.

43. Defendants engaged in these unfair or deceptive acts and practices with the intent that they result, and which did result, in the sale of dog and cat food to Plaintiff and the Class.

44. In engaging in unfair or deceptive conduct in violation of the CLRA, Defendants actively concealed and intentionally failed to disclose material facts about the characteristics of their dog and cat food, and further represented that such food was suitable for pet consumption.

45. As a result of Defendants' acts and practices as alleged in this Complaint, Plaintiff seeks an Order enjoining Defendants from continuing to engage in unlawful, unfair or fraudulent business practices, and any other act prohibited by law. Plaintiff has contemporaneous with this filing provided notice to Defendants, and will amend to add claims for damages under the CLRA if Defendants do not take appropriate corrective action.

## SECOND CLAIM FOR RELIEF
### [Negligence]

46. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein. Plaintiff asserts this claim against each and every Defendant on behalf of herself and the Class.

47. Defendants owed a duty to Plaintiff and the Class to provide pet food safe and suitable for pet consumption.

48. Through their failure to exercise due care, Defendants were negligent in manufacturing, distributing, marketing and selling pet food to Plaintiff and the Class.

49. Defendants failed to implement adequate quality control and adequate testing of its pet food that they introduced into the stream of commerce for sale to Plaintiff and the Class and for consumption by their pets.



03/26/2007   13:45   916 568 7890
03/26/2007 13:45 FAX  916 568 7890        WEXLER TORISEVA WALLACE                    ☒013/017

50. Defendants knew, or should have known, that their pet food, as described above, presents an unreasonable and unacceptable risk of injury or death to pets, and would result in foreseeable and avoidable damage.

51. The losses and damages described herein were foreseeable and avoidable.

52. Defendants' negligence proximately caused the losses and damages to Plaintiff and the Class.

### THIRD CLAIM FOR RELIEF
[Violation of the California Unfair Competition Law,
Business & Professions Code §§ 17200, *et seq.*]

53. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein. Plaintiff asserts this claim against each and every Defendant on behalf of herself and the Class.

54. Defendants' acts and practices, described herein, constitute unlawful, unfair or fraudulent business practices in violation of the Unfair Competition Law, Business & Professions Code sections 17200 *et seq* ("UCL").

55. The utility of Defendants' manufacturing, distribution, marketing and/or sale of contaminated dog and cat food is significantly outweighed by the gravity of the harm they impose on Plaintiff and the Class. Defendants' acts and practices are oppressive, unscrupulous or substantially injurious to consumers.

56. The above-described unfair, unlawful and fraudulent business practices conducted by Defendants present a threat and likelihood of harm and deception to members of the Class in that Defendants have systematically perpetrated and continue to perpetrate the unfair, unlawful and fraudulent conduct upon members of the public by engaging in the conduct described herein.

57. Plaintiff and the Class have suffered harm as a proximate result of the wrongful conduct of the Defendants alleged herein, and therefore bring this claim for relief for restitution and disgorgement. Plaintiff is a person who has suffered

1  injury in fact and has lost money and property as a result of such unfair
2  competition.
3      58.  Pursuant to Business and Professions Code sections 17200 and 17203,
4  Plaintiff, on behalf of herself and the Class, seeks an order of this Court: enjoining
5  Defendants from continued manufacture, distribution, marketing and sale of "cuts
6  and gravy" style dog and cat food in an unfair, unlawful and fraudulent manner, and
7  an order enjoining Defendants from collecting money from the Class from the sale
8  of pet food. Plaintiff further requests an order awarding Plaintiff and the Class
9  restitution and disgorgement of profits acquired by Defendants by means of such
10 unlawful acts and practices, so as to deter Defendants and to rectify Defendants'
11 unfair and unlawful practices and to restore any and all monies to Plaintiff and the
12 Class, which are still retained by Defendants, plus interest and attorneys' fees and
13 costs pursuant to, *inter alia*, Code of Civil Procedure section 1021.5.

### FOURTH CLAIM FOR RELIEF
### [For Unjust Enrichment]

15  59.  Plaintiff hereby realleges and incorporates by reference all paragraphs
16 previously alleged herein. Plaintiff asserts this claim against each and every
17 Defendant on behalf of herself and the Class.
18      60.  Defendants have received, and continue to receive, a benefit at the
19 expense of Plaintiff and members of the Class. Defendants have knowledge of this
20 benefit.
21      61.  Defendants have charged and collected from consumers, including
22 Plaintiff and members of the Class, money for dog and cat food that endangers the
23 lives of their pets. Defendants thus have received benefits that they have unjustly
24 retained at the expense of Plaintiff and members of the Class.
25      62.  As a direct and proximate result of Defendants' unlawful acts and
26 conduct, Plaintiff and members of the Class were deprived of the use of their
27 monies that was unlawfully charged and collected by Defendants, and are therefore
28

03/26/2007  13:45   916 568 7890
03/26/2007 13:45 FAX  916 568 7890          WEXLER TORISEVA WALLACE                    ☒015/017

1. entitled to restoration of their monies.

### FIFTH CLAIM FOR RELIEF
### [Breach Of Express Warranty]

63. Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein. Plaintiff asserts this claim against each and every Defendant on behalf of herself and the Class.

64. Defendants expressly warranted that their "cuts and gravy" style pet food was suitable and safe for pet consumption.

65. Defendants also expressly warranted that "it manufacturer[s] the private-label wet pet-food industry's most comprehensive product program with the highest standards of quality."

66. Plaintiff and the Class were induced by Defendants' marketing, advertising, promotion and labeling of the pet food as suitable "food" to rely upon such express warranty, and, in fact, relied upon the untrue warranty in purchasing the recalled pet food and feeding it to their pets.

67. Plaintiff and the Class were damaged as a proximate result of Defendants' breach of their express warranty.

### SIXTH CLAIM FOR RELIEF
### [Breach Of Implied Warranty]

68. Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein. Plaintiff asserts this claim against each and every Defendant on behalf of herself and the Class.

69. Defendants are merchants under section 2-104 and 2-314 of the Uniform Commercial Code.

70. Through their marketing, advertising, promotion and labeling of their "cuts and gravy" style pet food, Defendants impliedly warranted that such pet food was fit for the ordinary purpose for which it was intended, including to safely nourish pets with risk of illness or death, pursuant to section 2-314 of the Uniform

-14-
CLASS ACTION COMPLAINT



03/26/2007 13:45 916 568 7890
03/26/2007 13:46 FAX 916 568 7890    WEXLER TORISEVA WALLACE                @016/017

1 Commercial Code.

2     71. Through their marketing, advertising, promotion and labeling, Defendants knew that Plaintiff and the Class would purchase their pet food for the ordinary purpose of providing nourishment to their pets.

    72. Defendants manufactured, distributed, marketed, advertised, promoted and sole their pet food for the ordinary purpose for which it was purchased by Plaintiff and the Class.

    73. Plaintiff and the Class relied upon Defendants' representations and warranties, and purchased and used Defendants' pet food for the ordinary purpose for which it was sold.

    74. Defendants' pet food purchased by Plaintiff and the Class were unfit for their ordinary purpose when sold. Such food was sold while presenting a risk of risk of illness or death to pets. Defendants have accordingly breached the implied warranty of merchantability by selling such unfit pet food.

    75. Plaintiff and the Class were damaged as a proximate result of Defendants' breach of warranty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against Defendants as follows:

1. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her counsel of record to represent the Class;

2. For restitution, disgorgement and/or other equitable relief as the Court deems proper;

3. That pursuant to sections 17203 and 17204 of the Business and Professions Code, Defendants be permanently enjoined from performing or proposing to perform any of the aforementioned acts of unfair, unlawful and fraudulent business practices;

03/26/2007 13:46    916 568 7890
03/26/2007 13:46 FAX  916 568 7890         WEXLER TORISEVA WALLACE                    ☒017/017

4. For compensatory damages sustained by Plaintiff and all others similarly situated as a result of Defendants' unlawful acts and conduct;

5. For punitive damages pursuant to Civil Code § 1780(a)(4);

7. For a permanent injunction prohibiting Defendants from engaging in the conduct and practices complained of herein;

8. For pre-judgment and post-judgment interest;

9. For reasonable attorneys' fees and costs of suit, including expert witness fees; and

10. For such other and further relief as this Court may deem just and proper.

### JURY DEMAND

To the full extent available, Plaintiff demands a trial by jury.

Dated: March 26, 2007         WEXLER TORISEVA WALLACE LLP

By _____
   Mark J. Tamblyn

1610 Arden Way, Suite 290
Sacramento, California 95815
Telephone: (916) 568-1100
Facsimile: (916) 568-7890

Kenneth A. Wexler
WEXLER TORISEVA WALLACE LLP
One North LaSalle St., Suite 2000
Chicago, Illinois 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Stuart C. Talley
KERSHAW, CUTTER, & RATINOFF, LLP
980 9th Street, 19th Floor
Sacramento, California 95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

*Attorneys for Plaintiff and the Class*

-16-
CLASS ACTION COMPLAINT