UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| CHARLES RAY SIMS and PAMELA SIMS, Individually and on behalf of all others similarly situated,<br>　　　　Plaintiffs,<br><br>VERSUS<br><br>MENU FOODS INCOME FUND,<br>MENU FOODS MIDWEST CORPORATION,<br>MENU FOODS SOUTH DAKOTA INC. ,<br>MENU FOODS, INC., MENU FOODS HOLDINGS, INC.,<br>　　　　Defendants. | CASE NO. 5:07-cv-05053-JLH |

*******************************************************************************

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STAY ALL PROCEEDINGS

Plaintiffs, Charles Ray Sims and Pamela Sims, on behalf of themselves and others similarly situated, by and through their counsel of record, hereby respectfully submit this Memorandum in Opposition to Defendants' motion to stay all proceedings.

**I.　INTRODUCTION**

On March 21, 2007, Plaintiffs, on behalf of themselves and all other similarly situated residents of Arkansas, filed the instant action in this Court. On April 12, 2007, the Defendants avoided answering the Complaint by filing a Motion to Stay all proceedings.

## II. ARGUMENT

In support of its Motion to Stay, Defendants argue, among other things, that a stay is necessary to "avoid undue prejudice to the parties;" to avoid inconsistent class determinations;" and "that Judge Waters noted that judicial economy would be best served if litigation was facilitated in the appropriate forum."

As fully discussed herein, these arguments lack merit.

### A. Delaying the Ruling on Motions to Remand Pending Action by the J.P.M.L. on Motions to Transfer and Consolidate Is Unwarranted.

It has been established by both the J.P.M.L. and multiple district courts, motions to stay are generally denied when motions to transfer and consolidate are concurrently pending. The Defendants' mention of Judge Waters's opinion is misleading in that Judge Waters stayed a proceeding based upon his entry of the conditional order to transfer to an existing MDL. *Kohl v. American Home Prods. Corp.*, 78 F.Supp 2d 885 (W.D. Ark. 1999). In fact, the Eighth Circuit recognizes that a motion to transfer does not automatically stay discovery.

> The Court has addressed this same issue in two unpublished opinions. *See Baker v. Wyeth-Ayerst Labs. Div., et al.*, Civil No. 98-5126 (Aug. 6 1998) and *Brightwell v. A.H.Robins Co., Inc., et al.*, Civil No. 99-5061 (June 2, 1999). In those cases, **this court recognized that a motion to transfer a case to MDL does not automatically stay discovery, postpone rulings on pending motions, or generally suspend further proceedings in the court in which the action was filed.** *See Rule 1.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation. See also Tortola Restaurants, L.P. v. Kimberly-Clark Corp.*, 987 F.Supp. 1186, 1188-89 (N.D.Cal. 1997).

See *Kohl v. American Home Products Corp., et al.*, 78 F.Supp.2d 885 (emphasis added). In the case at hand, Plaintiffs seek an answer to their complaint and to initiate preliminary

discovery. This court will not be required to familiarize itself with the intricacies of the case at this early date, and the judicial resources extended to require the Defendants to Answer the Complaint and begin discovery would be minimal. Additionally, the Defendants would not be prejudiced by answering Plaintiffs' straight-forward product liability Complaint, and Plaintiffs' counsel is willing to accept discovery responses on a computer disc and share discovery with other Plaintiff's counsel. This will eliminate any potential hardship on the defense. If Defendants are allowed a stay, the Plaintiffs will be prejudiced by having to wait months to learn what defenses it will face. The Plaintiffs will not know if there are objections to various issues, i.e., subject matter jurisdiction, insufficiency of process, insufficiency of service of process and other defenses. The Federal Rules of Civil Procedure provide the defense twenty days to answer a complaint, not months, which is in effect what the defense has asked this Court to allow. Further, there is no assurance that the case will be transferred to another court, and there is no reason to prejudice the Plaintiffs' claim based upon a speculative transfer.

**B.     With Limited Exception, District Courts Should Not Stay Proceedings During the Pendency of a Motion for Consolidation Before the J.P.M.L.**

In the absence of extraordinary circumstances, both the Rules of the Judicial Panel on Multidistrict Litigation and the overwhelming case law urge district courts to deny requests for stays during the pendency of motions for transfer and consolidation before the J.P.M.L.

The Rules of the J.P.M.L. unequivocally provide that, during the pendency of a motion for consideration before the J.P.M.L., the case should be allowed to proceed:

The *pendency of a motion*, order to show cause, conditional transfer order or

> conditional remand order before the Panel concerning transfer or remand of an action pursuant to 28 U.S.C. § 1407 *does not affect or suspend orders and pretrial proceedings* in the district court in which the action is pending and *does not in any way limit the pretrial jurisdiction of that court.*

Rule 1.5 of the Rules of the J.P.M.L. (emphasis added). See also, Manual for Complex Litigation (3rd) § 31.131; 17 Moore's Federal Practice § 112.06[1] ("the pendency of transfer order does not limit the power of the transferor court to act on matters properly before it . . . .").

Indeed, well-established case law fully supports the principle that a case should proceed during the pendency of a motion to consolidate. Villarreal v. Chrysler Corp., 1996 U.S. Dist. LEXIS 3159, 1996 WL 116832 (Cal. 1996); Carol Cable Company, Inc. v. Koffler, 1989 U.S. Dist. LEXIS 8434 (MDL No. 797) (E.D. Pa. 1989) (district court denied Defendants' motion to stay discovery prior to MDL Panel's ruling on motion to transfer and consolidate); In re Airport Car Rental Antitrust Litig., 448 F.Supp. 273, 275 (J.P.M.L. 1978) (pendency of section 1407 proceedings should not delay progress of case); In re Air Crash Disaster at Paris, France, on March 3, 1974, 376 F.Supp. 887 (J.P.M.L. 1973) ("We have previously noted that the mere pendency of a motion before the Panel does not affect or suspend orders and discovery proceedings in the transferor district court . . . ."); In re Four Seasons Securities Litigation, 362 F.Supp. 574, 575 n.2 (J.P.M.L. 1973) (same); In re Penn Central Securities, 333 F.Supp. 382, 384 n.4 (J.P.M.L. 1971); In re Master Key Antitrust Litig. 320 F.Supp. 1404 (J.P.M.L. 1971) (court should proceed with case). See also In re Swine Flu Immunization Products Liability Litig., 89 F.R.D. 695 (D.C. 1981) (substantial discovery conducted prior to MDL consolidation); EEOC v. Burlington Northern, Inc., 618 F.Supp. 1046 (D. Ill. 1985) (same).

Therefore, the pendency of Defendants' motion for transfer and consolidation before the J.P.M.L. does not invoke an automatic stay of this case. To the contrary, both case law and the J.P.M.L. Rules provide that a stay is unwarranted.

### C. A Stay Subjects Plaintiffs to Substantial, Unnecessary and Undue Prejudice.

Plaintiffs, who as master of their <u>Complaint</u>, have the right to proceed in the venue of their choice and would be obligated to spend a substantial amount of time and money (as well as to retain local counsel in another state), were the J.P.M.L. to send this matter to another federal district court. If the cases are sent to another district court, Plaintiffs will have lost the opportunity to prosecute this case during the pendency of the stay.

Defendants have had ample time and opportunity to prepare a responsive answer to Plaintiffs' <u>Complaint</u> in this Court, as they have been aware of the circumstances surrounding claims and allegations made by Plaintiffs as set forth in the following Timeline of events:

| DATE | EVENT | SOURCE |
| --- | --- | --- |
| 02/20/07 | Menu Foods admits receiving six complaints about kidney failure in pets | Reuters 03/19/07; CBC 03/21/07 |
| 02/27/07 | Menu Foods initiates laboratory feeding experiment on 40-50 cats and dogs--7 to 10 deaths were linked to this tasting trial. | Reuters 03/19/07 |
| 02/27/07 | Mark Wiens, Chief Financial Officer of Menu Foods, sells about half his shares of stock in the company on February 26 and February 27, 2007, 3 weeks before the pet food recall was announced | Washington Post 04/11/07 |
| 03/01/07 | Plaintiffs notice that their dog, Abby, is having problems with vomiting and decreased appetite | Plaintiffs |
| 03/06/07 | Menu Foods stops using China supplier | Reuters 03/31/07 |

-5-

| | | |
|---|---|---|
| 03/12/07 | Plaintiffs take their dog, Abby, to Dr. Steinlage, at All Dogs Clinic in Rogers, Arkansas, for diagnosis and treatment; given doxycycline; told to return to clinic if dog continues to deteriorate or if no improvements within 48 hours | Dr. Eric Steinlage veterinarian records |
| 03/13/07 | Plaintiffs' dog, Abby, eats a little and antibiotic treatment continued, with 21 day regimen prescribed | Dr. Eric Steinlage veterinarian records |
| 03/15/07 | Menu Foods informs the FDA of the pet deaths. | USA Today 04/06/07 FDA Consumer Update |
| 03/16/07 | Plaintiffs' dog, Abby, continues to have loss of appetite, loss of weight, vomiting, no bowel movements; x-rays showed kidneys may be enlarged; abdominal exploratory surgery scheduled | Dr. Eric Steinlage veterinarian records |
| 03/16/07 | Menu Foods announces a recall of 60 million cuts and gravy dog and cat food products in cans and pouches. | Menu Foods press release; press reports |
| 03/17/07 | Abdominal exploratory surgery on Plaintiffs' dog, Abby, shows possible swelling of kidneys and CBC and chemistry ordered and drawn | Dr. Eric Steinlage veterinarian records |
| 03/17/07 | Plaintiffs' dog, Abby, suffers acute renal failure | Dr. Eric Steinlage veterinarian records |
| 03/18/07 | Serum blood chemistry on Plaintiffs' dog, Abby, reveals that she was is kidney failure and decision made to have her Euthanized and cremated | Dr. Eric Steinlage veterinarian records |
| 03/23/07 | New York State Animal Health Diagnostic Center at Cornell University identifies pet food contaminant as aminopterin--rat poison--can cause kidney failure | MSNBC-The Associated Press 03/23/07 |
| 03/30/07 | Menu Foods announces that food it manufactured after March 6 is safe | Menu Foods press conference statement |
| 03/30/07 | FDA announces melamine found in samples of wheat gluten imported from China associated with kidney problems | FDA press release |
| 04/05/07 | Menu Foods expands its recall to all products manufactured between November 8, 2006 and March 6, 2007 that contain wheat gluten supplied by ChemNutra, Inc.; 20 varieties in the US and Canada and 7 varieties for Europe are added to the list of recalled products. | 04/05/07 Menu Foods press release |

| 04/17/07 | Menu Foods expands its recall to include one additional dog food product and two additional production dates of eight varieties of tainted pet food | Reuters 04/18/07 |

Clearly the Defendants knew at least as early as February 20, 2007, that its product was causing kidney failure in pets throughout the country. Armed with the knowledge that its product, pet food, might be causing pet deaths, Defendants waited one week to initiate any testing. On approximately, February 27, 2007, Defendants discovered that between 14-25% of the animals tested died after eating the food. On or about the same day, Defendants' Chief Financial Officer sold half of his stock. About one week later on or about March 6, 2007, Defendant stopped using a Chinese food supplier. Defendants then waited until March 15, 2007 to advise the FDA of the Defendants' test results. After consulting with the FDA, Defendants issued a recall of 60 million food units including more than 90 brands of cat and dog food. On March 23, 2007, a New York State Laboratory discovered a form of rat poison unapproved for use in the United States in Defendants' pet food. A week later on March 30, 2007 the FDA identified melamine in wheat gluten imported from China that had been used in Defendants' pet food. On this date, March 30, 2007, Defendants came forward with a press release that all of its food products manufactured after March 6, 2007, were safe. Less than one week later, Defendants expanded the recall of their product back to November 8, 2006. It was announced today, April 18, 2007, that Defendants have expanded their recall yet again to add one additional dog food product to their recall list and two more production dates of eight varieties of tainted pet food.

The Defendants have been less than forthcoming with the public and the FDA.

Defendants' Chief Financial Officer was selling his stock well before the recall. The Defendants quit using its Chinese supplier before the State of New York discovered aminopterin, a rat poison unapproved for use in the United States but allowed in China. The Defendants discontinued its Chinese supplier three weeks before the FDA discovered melamine in the wheat gluten purchased from China. Defendants are playing a lethal game with the public, the FDA, and now this Court. As outlined in the timeline above, Plaintiffs' dog would not have died had Defendants advised the public and the FDA of the problem when it was determined after their testing on February 27, 2007. Instead, Defendants' Chief Financial Officer chose to sell off shares of stock. The Defendants will stall answering questions about its actions as long as the courts will allow them.

The Defendants are not prejudiced by being forced to comply with the law and answer Plaintiffs' Complaint. Further, they will not be prejudiced from providing basic information, including corporate structure, animal health complaints, ingredients, supplier information, test results and correspondence. Conversely, the Plaintiffs are prejudiced by being prevented from obtaining basic facts known by the defense, by having to guess at potential defenses that will be claimed, and by relying on what is reported in newspapers and press releases. Again, the Court will not have to expend many resources in requiring Defendants to comply with the law by answering a complaint and engaging in basic discovery.

### III. CONCLUSION

Accordingly, for the reasons set forth above, Plaintiffs respectfully request that this Court deny Defendants' motion for an <u>Order</u> staying all proceedings, and instead <u>Order</u>

Defendants to Answer Plaintiffs' Complaint and proceed with discovery pursuant to the Federal Rules of Civil Procedure.

Dated: April 18, 2007.

>                    CHARLES RAY SIMS and PAMELA SIMS, PLAINTIFFS
>
>                    LUNDY & DAVIS, L.L.P.
>                    Attorneys for the Plaintiff
>                    300 N. College Ave., Suite 309
>                    Fayetteville, AR 72701
>                    (479) 527-3921
>
>            By:     /s/ Jason M. Hatfield
>                    Jason M. Hatfield
>                    AR Bar #97143

## CERTIFICATE OF SERVICE

I, the undersigned, of Lundy & Davis, L.L.P., state that I have caused the above and foregoing document to be served upon defense counsel via e-mail transmission, as follows:

>Hon. Christy Comstock
>Hon. Robert L. Jones, III
>Jones & Harper
>21 West Mountain, Suite 300
>Fayetteville, AR 72701
>582-3382
>587-8189 – fax
>ccomstock@joneslawfirm.com

>Hon. Edward B. Ruff
>Hon. Michael P. Turiello
>Pretzel & Stouffer, Chartered
>One South Wacker Drive, Suite 2500
>Chicago, IL 60606
>(312) 346-1973
>(312) 346-8242
>eruff@pretzel-stouffer.com
>mturiello@pretzel-stouffer.com

on this 18th day of April, 2007.

>/s/ Jason M. Hatfield
>Jason M. Hatfield