# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| CHARLES RAY SIMS and PAMELA SIMS, Individually and on behalf of all others similarly situated, | § § § § | |
| Plaintiffs, | § § | |
| VERSUS | § § | Case No. 07 CV 05053 |
| MENU FOODS INCOME FUND, MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., MENU FOODS HOLDINGS, INC., | § § § § § | |
| Defendants. | § § | |

## DEFENDANTS' ANSWER TO CLASS ACTION COMPLAINT

Defendants, Menu Foods Income Fund, Menu Foods Midwest Corporation, Menu Foods South Dakota, Inc., Menu Foods, Inc., Menu Foods Holdings, Inc., by their attorneys, and for their answer to class action complaint hereby state as follows.

## GENERAL ALLEGATIONS

1.    This is an action for damages relating to Defendants' design, manufacture, sale, testing, marketing, advertising, promotion and/or distribution of unsafe canned and foil pouched dog and cat food.

**ANSWER:    Defendants have insufficient knowledge to admit or deny the allegations contained in paragraph 1 and therefore deny same**

Page 1 of  36

Dockets.Justia.com

**and request strict proof thereof.**

2.    This Court has jurisdiction over the subject matter and Defendants in this case pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants and the matter in controversy involves a request that the Court certify a class action.

> **ANSWER:    Defendants admit only that subject matter jurisdiction is proper under 28 U.S.C. § 1332.  Defendants deny that Plaintiff' complaint should be certified as a class action.**

3.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts, conduct and damages complained of occurred in this district as Plaintiffs' residency is in Benton County, Arkansas, within the geographical boundaries of this Court.

> **ANSWER:    Defendants admit only that venue is proper in this district under 28 U.S.C. § 1391(b)(2). Defendants deny all remaining allegations contained in paragraph 3.**

## PARTIES, JURISDICTION AND VENUE

4.    Defendant MENU FOODS INCOME FUND is an unincorporated company with its principal place of business in Ontario, Canada.  It is doing business in the State of Arkansas.  Jurisdiction is appropriate pursuant to the Arkansas Long Arm Statute, Sec. 16-4-101, and service may be effected through the Hague Convention on service abroad of judicial and extra judicial documents and civil or commercial matters (The Hague Convention) at 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

> **ANSWER:** **Defendants admit only that Menu Foods Income Fund is an unincorporated company with its principal place of business in Ontario, Canada. Defendants deny all remaining allegations contained in paragraph 4.**

5.    MENU FOODS MIDWEST CORPORATION is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

> **ANSWER:** **Defendants admit only that Menu Foods Midwest Corporation is a Delaware corporation. Defendants deny all remaining allegations contained in paragraph 5.**

6.    Defendant, MENU FOODS SOUTH DAKOTA INC., is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

> **ANSWER:** **Defendants admit only that Menu Foods South Dakota, Inc. is a Delaware corporation. Defendants deny all remaining allegations contained in paragraph 6.**

7.    Defendant MENU FOODS HOLDINGS, INC. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

> **ANSWER:** **Defendants admit only that Menu Foods Holdings, Inc. is a Delaware corporation. Defendants deny all remaining allegations contained in paragraph 7.**

8.    Defendant MENU FOODS, INC. is a New Jersey corporation and may be

served through its registered agent for service, Corporation Trust Company, 820 Bear

Tavern Road, West Trenton, New Jersey.

> **ANSWER:    Defendants admit only that Defendant Menu Foods, Inc. is a New Jersey corporation.  Defendants deny all remaining allegations contained in paragraph 8.**

9.    Defendants MENU FOODS INCOME FUND, MENU FOODS MIDWEST

CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., and MENU

FOODS HOLDINGS, INC. are hereinafter referred to collectively as "Defendants" or

"MENU."

> **ANSWER:    Defendants generally admit the allegations contained in paragraph 9.**

10.    Upon information and belief, Defendants MENU FOODS MIDWEST

CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., and MENU

FOODS HOLDINGS, INC. are wholly owned subsidiaries of MENU FOODS INCOME

FUND, a business entity registered in and headquartered in Ontario, Canada. MENU

provides principal development, exporting, financing, holding company, marketing,

production, research and servicing for MENU animal food products in the United States,

including canned and foil pouched dog and cat food. MENU FOODS INCOME FUND is

one of the largest animal food producing companies in the world, and MENU operates as

one of the largest animal food companies in the United States, whether measured by

number of products produced and sold, revenues, or market capitalization.

> **ANSWER:    Defendants generally admit that Menu Foods Income Fund is the parent company of Menu Foods Midwest Corporation, Menu Foods South Dakota, Inc., Menu Foods, Inc., and Menu Foods**

**Holdings, Inc., which is a manufacturer of animal food products. Defendants deny all remaining allegations contained in paragraph 10.**

11.    At all times herein mentioned, Defendants were engaged in the business of the manufacturing, packaging, marketing, distribution, promotion, and sale of dog and cat canned and foil pouched food products (hereinafter the "Product"), and at all times herein relevant, were engaged in the promotion and marketing of animal food products, including canned and foil pouched dog and cat food.

> **ANSWER:    Defendants admit only that Defendants manufacture or offer for sale animal food products.    Defendants deny all remaining allegations contained in paragraph 11.**

12.    Plaintiff CHARLES RAY SIMS resides at 2705 W. Dogwood, Rogers, Arkansas.  At all times material to this complaint, he was a resident of Rogers, in the State of Arkansas.

> **ANSWER:    Defendants have insufficient knowledge to either admit or deny the allegations contained in paragraph 12 and therefore deny same and request strict proof thereof.**

13.    Plaintiff PAMELA SIMS resides at 2705 W. Dogwood, Rogers, Arkansas.  At all times material to this complaint, she was a resident of Rogers, in the State of Arkansas.

> **ANSWER:    Defendants have insufficient knowledge to either admit or deny the allegations contained in paragraph 13 and therefore deny same and request strict proof thereof.**

14.    Plaintiffs CHARLES RAY SIMS and PAMELA SIMS were the owners of a family dog ("ABBY") at all times material to this complaint.

**ANSWER:     Defendants have insufficient knowledge to either admit or deny the allegations contained in paragraph 14 and therefore deny same and request strict proof thereof.**

15.     This Court has diversity jurisdiction and jurisdiction pursuant to the Class Action Fairness Act of 2005.

**ANSWER:     Defendants admit only that this Court has diversity jurisdiction. Defendants deny that Plaintiff' complaint should be certified as a class action.**

## CLASS ACTION ALLEGATIONS

16.     Defendant MENU manufactured, distributed, marketed and sold canned and foil pouched dog and cat food to consumers in the United States. These consumers compose the putative class in this action and have rights that are substantially the same.

**ANSWER:     Defendants generally admit that Defendants manufacture or offer for sale animal food products.  Defendants deny all remaining allegations contained in paragraph 16.**

17.     Defendant MENU has issued a recall for over 90 brands of dog and cat canned and foil pouched food in the United States since March 16, 2007, translating to in excess of sixty million cans and pouches of dog and cat food recalled throughout the United States.

**ANSWER:     Defendants generally admit that Defendants issued a recall for animal food products throughout the United States.  Defendants deny all remaining allegations contained in paragraph 11.**

18.     The consumers composing the putative class in this action consist of: (1) all

persons or entities who purchased Menu Food brands at any time and disposed of or will

not use the products based on publicity surrounding the safety and recall of the products;

(2) all persons or entities who purchased Menu Foods products and fed products to their

pets on or since December 6, 2006; and (3) all persons or entities who purchased Menu

Food products from wholesale distributors on or since December 6, 2006 to the present.

> **ANSWER:    Defendants have insufficient knowledge to either admit or deny the allegations contained in paragraph 18 and therefore deny same and request strict proof thereof.**

19.    The consumers composing the putative class are so numerous that joinder of

all members is impracticable; the questions of law or fact are common to all Members of

the class; the claims and defenses of Plaintiff SIMS are typical of the claims or defenses

of

the class; and Plaintiff SIMS will fairly and adequately protect the interests of the class.

> **ANSWER:    Defendants deny that Plaintiff' complaint should be certified as a class action. Defendants deny all remaining allegations contained in paragraph 19.**

20.    While the exact number and identities of the members of the class are

unknown at this time, it is asserted that the class consists of thousands of persons. Upon

further identification of the recipient class, class members may be notified of the pendency

of this action by published class notice and/or by other means deemed appropriate by the

Court.

> **ANSWER:    Defendants deny that Plaintiff' complaint should be certified as a**

**class action. Defendants deny all remaining allegations contained in paragraph 20.**

21.    The sheer number of consumers composing the putative class is so numerous as to make separate actions by each consumer impractical and unfair and a class action certification represents the superior method for the fair and efficient adjudication of the controversy in question.

> **ANSWER:    Defendants deny that Plaintiff' complaint should be certified as a class action. Defendants deny all remaining allegations contained in paragraph 21.**

22.    There is no plain, speedy or adequate remedy other than by maintenance of this class action because Plaintiffs SIMS are informed and believe that the economic damage to each member of the class makes it economically unfeasible to pursue remedies other than through a class action. There would be a failure of justice but for the maintenance of this class action.

> **ANSWER:    Defendants deny that Plaintiff' complaint should be certified as a class action. Defendants deny all remaining allegations contained in paragraph 22.**

## FACTUAL BACKGROUND

23.    Plaintiffs dog, ABBY, died as a direct result of the ingestion of canned and/or foil pouched dog food manufactured and distributed in the United States by Defendants.

> **ANSWER:    Defendants deny the allegations contained in paragraph 23.**

24.    Defendants distributed their "Cuts and Gravy" canned and foil pouched dog

and cat food product by misleading users about the product and by failing to adequately warn the users of the potential serious dangers, which Defendants knew or should have known, might result from animals consuming its product. Defendants widely and successfully marketed Defendants' canned and foil pouched dog and cat food products throughout the United States by, among other things, conducting promotional campaigns that misrepresented the safety of Defendants' products in order to induce widespread use and consumption.

**ANSWER:    Defendants deny the allegations contained in paragraph 24.**

25.    As a result of claims made by Defendants regarding the safety and effectiveness of Defendants' canned and foil pouched dog and cat food products, Plaintiff SIMS fed their dog, ABBY, canned dog food distributed under the format "Cuts and Gravy", said product being manufactured and distributed by Defendants.

**ANSWER:    Defendants deny the allegations contained in paragraph 25.**

26.    As a result of Plaintiffs SIMS feeding their dog, ABBY, the Product manufactured and distributed by Defendants, their dog developed severe health problems, including but not limited to anorexia, lethargy, diarrhea and vomiting.

**ANSWER:    Defendants deny the allegations contained in paragraph 26.**

27.    Plaintiffs SIMS took their dog, ABBY, to Dr. Eric P. Steinlage, at All Dogs Clinic, Rogers. Arkansas, who performed tests and surgery on the dog.

**ANSWER:    Defendants have insufficient knowledge to either admit or deny the allegations contained in paragraph 27 and therefore deny same and request strict proof thereof.**

28.    Dr. Eric P. Steinlage determined that Defendants' Product was the cause of the dog's kidney failure and the dog died on March 16.2007.

> **ANSWER:    Defendants have insufficient knowledge to either admit or deny the allegations contained in paragraph 28 and therefore deny same and request strict proof thereof.**

29.    Had Plaintiff SIMS known the risks and dangers associated with Defendants' canned and foil pouched dog food product sold under the format "Cuts and Gravy", or had Defendants disclosed such information to Plaintiff, he would not have fed Defendants' product to their dog, ABBY, and the dog would not have suffered subsequent health complications and ultimately died before the age of two.

> **ANSWER:    Defendants deny the allegations contained in paragraph 29.**

30.    Upon information and belief, as a result of the manufacturing and marketing of Defendants' canned and foil pouched dog and cat food products, Defendants have reaped huge profits; while concealing from the public, knowledge of the potential hazard associated with the ingestion of Defendants' canned and foil pouched dog and cat food products.

> **ANSWER:    Defendants deny the allegations contained in paragraph 30.**

31.    Defendants failed to perform adequate testing in that the adequate testing would have shown that Defendants' canned and foil pouched dog and cat food products produced serious side effects with respect to which Defendants should have taken

appropriate measures to ensure that its defectively designed product would not be placed into the stream of commerce and/or should have provided full and proper warnings accurately and fully reflecting the scope and severity of symptoms of those side effects should have been made.

      **ANSWER:    Defendants deny the allegations contained in paragraph 31.**

32.     Defendants' had notice and knowledge a~ early as February 20, 2007, that their Product presented substantial and unreasonable risks, and possible death, to animals consuming the Product. As such. said consumers' dogs and cats, including Plaintiffs dog, ABBY, were unreasonably subjected to the risk of illness or death from the consumption of Defendants' Product.

      **ANSWER:    Defendants deny the allegations contained in paragraph 32.**

33.     Despite such knowledge. Defendants, through their officers, directors, partners and managing agents for the purpose of increasing sales and enhancing its profits, knowingly and deliberately failed to remedy the known defects of Defendants' Product in a timely manner, failed to conduct testing in a timely manner, and failed to warn the public in a timely manner, including Plaintiff. of the serious risk of illness and death occasioned by the defects inherent in Defendants' Product.

      **ANSWER:    Defendants deny the allegations contained in paragraph 33.**

34.     Defendants and their officers, agents, partners and managers intentionally proceeded with the manufacturing, distribution, sale and marketing of Defendants' Product,

knowing that the dogs and cats ingesting the Defendants' Product would be exposed to serious potential danger. in order to advance their own pecuniary interests.

**ANSWER:    Defendants deny the allegations contained in paragraph 34.**

35.    Defendants' conduct was wanton and willful, and displayed a conscious disregard for the safety of the Product and particularly of the damage it would cause pet owners like the SIMS, entitling these Plaintiffs to exemplary damages.

**ANSWER:    Defendants deny the allegations contained in paragraph 35.**

36.    Defendants acted with conscious and wanton disregard of the health and safety of Plaintiffs dog, ABBY. and Plaintiff requests an award of additional damages for the sake of example and for the purpose of punishing such entities for their conduct, in an amount sufficiently large to be an example to others, and to deter Defendants and others from engaging in similar conduct in the future. The above-described wrongful conduct was done with knowledge, authorization, and ratification of officers, directors, partners and managing agents of Defendants.

**ANSWER:    Defendants deny the allegations contained in paragraph 36.**

37.    As a direct and proximate result of Defendants' negligence as described herein,

Plaintiff SIMS sustained damages in the loss of their family pet.

**ANSWER:    Defendants deny the allegations contained in paragraph 37.**

**AS AND FOR A FIRST CAUSE OF ACTION SOUNDING IN STRICT PRODUCT**

## LIABILITY - FAILURE TO WARN

38.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

**ANSWER:    Defendants re-plead and incorporate by reference their answers to paragraphs 1-37 of Plaintiff's class action complaint as and for their answer to paragraph 38, as if fully set forth herein.**

39.    Defendants manufactured, marketed, distributed, and supplied Defendants' Product to distribution centers throughout the United States. As such, Defendants had a duty to warn the public, including Plaintiff, of the health risks and possible death associated with using Defendants' Product.

**ANSWER:    Defendants generally admit that Defendants manufacture or offer for sale animal food products, which are distributed in the United States.  Defendants deny all remaining allegations contained in paragraph 39.**

40.    Defendants' Product was under the exclusive control of Defendants, and was sold without adequate warnings regarding the risk of serious injury and other risks associated with its use.

**ANSWER:    Defendants deny the allegations contained in paragraph 40.**

41.    As a direct and proximate result of the defective condition of Defendants' Product as manufactured and/or supplied by Defendants, and as a direct and proximate result of negligence, gross negligence, willful and wanton misconduct, or other wrongdoing and actions of Defendants described herein, Plaintiff suffered damages.

**ANSWER:    Defendants deny the allegations contained in paragraph 41.**

42.    Upon information and belief, Defendants knew of the defective nature of Defendants' Product but continued to design, manufacture. market, and sell it so as to maximize sales and profits at the expense of animal health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harm caused by Defendants' Product and in violation of their duty to provide an accurate, adequate, and complete warning concerning the use of Defendants' Product.

**ANSWER:    Defendants deny the allegations contained in paragraph 42.**

43.    Defendants failed to warn the public or Plaintiff in a timely manner of the dangerous propensities of Defendants' Product, which dangers were known or should have been known to Defendants, as they were scientifically readily available.

**ANSWER:    Defendants deny the allegations contained in paragraph 43.**

44.    Defendants knew and intended that Defendants' - Product would be distributed through the United States without any inspection for defects.

**ANSWER:    Defendants deny the allegations contained in paragraph 44.**

45.    Defendants also knew that veterinary clinics, pet food stores, food chains and users such as Plaintiff would rely upon the representations and warranties made by Defendants on the product labels and in other promotional and sales materials upon which the Plaintiff did so rely.

**ANSWER:    Defendants deny the allegations contained in paragraph 45.**

46.    As a direct and proximate result of the Defendants' distribution of the product without adequate warnings regarding the health risks to animals, the Plaintiffs suffered damage as previously alleged herein, including ascertainable economic loss, including the purchase price of Defendants' Product, out-of-pocket costs of veterinary medical tests and treatment for their dog, ABBY, out-of-pocket costs of disposal/burial fees after the death of their dog, ABBY, as well as the pecuniary value.

**ANSWER:    Defendants deny the allegations contained in paragraph 46.**

47.    Defendants' conduct in the packaging, warning, marketing, advertising, promotion, distribution, and sale of Defendants' pet foods, was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiffs' pets, thereby entitling Plaintiffs to punitive damages in an amount to be determined at trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

**ANSWER:    Defendants deny the allegations contained in paragraph 47.**

48.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

**ANSWER:    Defendants deny that Plaintiff' complaint should be certified as a class action. Defendants deny all remaining allegations contained in paragraph 48.**

## AS AND FOR A SECOND CAUSE OF ACTION SOUNDING IN STRICT PRODUCT LIABILITY - DEFECTIVE IN DESIGN OR MANUFACTURE

49.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

**ANSWER:    Defendants re-plead and incorporate by reference their answers to paragraphs 1-48 of Plaintiff's class action complaint as and for their answer to paragraph 49, as if fully set forth herein.**

50.    Defendants were the manufacturers, sellers, distributors, marketers and/or suppliers of Defendants' Product, which was defective and unreasonably dangerous to the Plaintiffs' pets.

**ANSWER:    Defendants generally admit that Defendants manufacture or offer for sale animal food products.  Defendants deny all remaining allegations contained in paragraph 50.**

51.    Defendants' Product was sold, distributed, supplied, manufactured, marketed, and/or promoted by Defendants, and was expected to reach and did reach consumers without substantial change in the condition in which it was manufactured and sold by Defendants.

**ANSWER:    Defendants deny the allegations contained in paragraph 51.**

52.    The Product was manufactured, supplied, and/or sold by Defendants and was defective in design or formulation in that when it left the hands of the manufacturers and/or sellers it was unreasonably dangerous in that its foreseeable risks exceeded the benefits associated with the designs and/or formulations of the Product.

**ANSWER:    Defendants deny the allegations contained in paragraph 52.**

53.     Upon information and belief, Defendants actually knew of the defective nature of Defendants' Product but continued to design, manufacture, market, and sell it so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by Defendants' Product.

**ANSWER:    Defendants deny the allegations contained in paragraph 53.**

54.     At all times material to this action, the Product was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendants in a defective and unreasonably dangerous condition in ways which include, but are not limited to, one or more of the following:

a.     When placed in the stream of commerce, the Product contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting the dogs and cats of the consumers, including Plaintiff, to risks which exceeded the benefits of the Product;

b.     The Product was insufficiently tested;

c.     The Product caused serious illness, harmful side effects, and possible death that outweighed any potential utility;

d.     In light of the potential and actual risk of harm associated with

ingestion of the Product by dogs and cats, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that the Product should not have been marketed, distributed or sold in that condition.

**ANSWER:    Defendants deny the allegations contained in paragraph 54, including all sub-paragraphs (a) through (d).**

55.    At all times material to this action, the Product was designed, tested, Inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed, it was expected to reach, and did reach, purchasers of the Product across the United States, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was sold.

**ANSWER:    Defendants deny the allegations contained in paragraph 55.**

56.    At all times, Plaintiff purchased the Product for its intended or reasonably foreseeable purpose.

**ANSWER:    Defendants have insufficient knowledge to either admit or deny the allegations contained in paragraph 56 and therefore deny same and request strict proof thereof.**

57.    As a direct, legal proximate and producing result of the defective and unreasonably dangerous condition of the Product, Plaintiff sustained damage, for which Plaintiff is entitled to recovery.

**ANSWER:    Defendants deny the allegations contained in paragraph 57.**

58.     As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of the Product, Plaintiff's dog, ABBY, was injured in health, strength and activity and subsequently died after having suffered physical injuries.

**ANSWER:     Defendants deny the allegations contained in paragraph 58.**

59.     As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of the Product, Plaintiffs dog, ABBY, required reasonable and necessary veterinary treatment and services and incurred expenses for which Plaintiff is entitled to damages, along with the expenses of disposal/burial of the family pet.

**ANSWER:     Defendants deny the allegations contained in paragraph 59.**

60.     As a direct and proximate result of the design and manufacturing defects of Defendants' Product, Plaintiff suffered damages as previously alleged herein.

**ANSWER:     Defendants deny the allegations contained in paragraph 60.**

61.     Defendants' aforementioned conduct was committed with knowing, conscious and deliberate disregard for the rights and safety of consumers such as Plaintiff, including Defendants' knowingly withholding. and/or misrepresenting information to the public, including Plaintiff, which information was material and relevant to the harm in question, punitive damages in an amount to be determined at trial that are appropriate to punish Defendants and deter them from similar conduct in the future.

**ANSWER:    Defendants deny the allegations contained in paragraph 61.**

62.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

**ANSWER:    Defendants deny that Plaintiff' complaint should be certified as a class action. Defendants deny all remaining allegations contained in paragraph 62.**

## AS AND FOR A THIRD CAUSE OF ACTION SOUNDING IN FRAUD

63.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

**ANSWER:    Defendants re-plead and incorporate by reference their answers to paragraphs 1-62 of Plaintiff's class action complaint as and for their answer to paragraph 63, as if fully set forth herein.**

64.    At all material times. Defendants were engaged in the business of manufacturing, marketing. distributing, promoting, and selling Defendants' Product.

**ANSWER:    Defendants generally admit that Defendants manufacture or offer for sale animal food products.  Defendants deny all remaining allegations contained in paragraph 64.**

65.    Defendants made misrepresentations of material facts to, and omitted and/or concealed material facts from. Plaintiff in the advertising, marketing, distribution and sale of Defendants' Product regarding its safety and use.

**ANSWER:    Defendants deny the allegations contained in paragraph 65.**

66.    Defendants deliberately and intentionally misrepresented to, and omitted and/or concealed material facts from. consumers. including Plaintiff SIMS, that Defendants' Product was safe when ingested by dogs and cats.  Such misrepresentations, omissions, and concealments of facts include, but are not limited to:

      a.    Failing to disclose, and/or intentionally concealing, the results of tests showing the potential health risks to dogs and cats associated with the use of Defendants' Product;

      b.    Failing to include adequate warnings with Defendants' Product about the potential and actual risks and the nature, scope, severity, and duration of serious adverse effects of Defendants' Product;

      c.    Concealing information regarding the known health risks to dogs and cats associated with Defendants' Product; and;

      d.    Concealing the known incidents of illnesses and death of dogs and cats, as previously alleged herein.

**ANSWER:    Defendants deny the allegations contained in paragraph 66, including all sub-paragraphs (a) through (d).**

67.    Defendants intentionally concealed facts known to them, as alleged herein, in order to ensure increased sales of Defendants' Product.

**ANSWER:    Defendants deny the allegations contained in paragraph 67.**

68.    Defendants had a duty to disclose the foregoing risks and failed to do so, despite possession of information concerning those risks. Defendants' representations

that

Defendants' Product was safe for its intended purpose were false, as Defendants' Product

was, in fact, dangerous to the health of and ultimately fatal to Plaintiff SIMS' dog, ABBY.

**ANSWER:    Defendants deny the allegations contained in paragraph 68.**

69.    Defendants knew that their statements were false, knew of incidents of

serious illnesses and deaths in dogs and cats, and knew that their omissions rendered

their statements false or misleading.

**ANSWER:    Defendants deny the allegations contained in paragraph 69.**

70.    Further, Defendants failed to exercise reasonable care in ascertaining the

accuracy of the information regarding the safe use of Defendants' Product, and failed to

disclose that Defendants' Product caused possible death in dogs and cats, among other

serious adverse effects. Defendants also failed to exercise reasonable care in

communicating the information concerning Defendants' Product to Plaintiff SIMS, and/or

concealed facts that were known to Defendants.

**ANSWER:    Defendants deny the allegations contained in paragraph 70.**

71.    Plaintiff SIMS was not aware of the falsity of the foregoing representations,

nor was Plaintiff SIMS aware that one or more material facts concerning the safety of

Defendants' Product had been concealed or omitted.

**ANSWER:    Defendants have insufficient knowledge to either admit or deny
the allegations contained in paragraph 71 and therefore deny
same and request strict proof thereof.**

Page 22 of  36

72.    In reliance upon Defendants' misrepresentations (and the absence of disclosure of the serious health risks), Plaintiff SIMS fed Defendants' Product to their dog, ABBY. Had Plaintiff SIMS known the true facts concerning the risks associated with Defendants' Product, he would not have purchased the Product nor fed the Product to the family pet.

> **ANSWER:    Defendants have insufficient knowledge to either admit or deny the allegations contained in paragraph 72 and therefore deny same and request strict proof thereof.**

73.    The reliance by Plaintiff SIMS upon Defendants' misrepresentations was justified because said misrepresentations and omissions were made by individuals and entities that were in a position to know the facts concerning Defendants' Product.

> **ANSWER:    Defendants deny the allegations contained in paragraph 73.**

74.    Plaintiff SIMS was not in a position to know the facts because Defendants aggressively promoted the use of Defendants' Product and concealed the risks associated with its use, thereby inducing Plaintiff SIMS to purchase Defendants' Product.

> **ANSWER:    Defendants deny the allegations contained in paragraph 74.**

75.    As a direct and proximate result of Defendants' misrepresentations, and/or concealment, Plaintiffs suffered damages as previously alleged herein.

> **ANSWER:    Defendants deny the allegations contained in paragraph 75.**

76.    Defendants' conduct in concealing material facts and making the foregoing

misrepresentations, as alleged herein, was committed with conscious or reckless disregard of the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages in an amount to be determined at trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

> **ANSWER:    Defendants deny the allegations contained in paragraph 76.**

77.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

> **ANSWER:    Defendants deny that Plaintiff' complaint should be certified as a class action. Defendants deny all remaining allegations contained in paragraph 77.**

## AS AND FOR A FOURTH CAUSE OF ACTION, SOUNDING IN IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AND IMPLIED WARRANTY OF MERCHANTABILITY

78.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

> **ANSWER:    Defendants re-plead and incorporate by reference their answers to paragraphs 1-77 of Plaintiff's class action complaint as and for their answer to paragraph 78, as if fully set forth herein.**

79.    Defendants manufactured, marketed,· sold, and distributed Defendants' Product.

> **ANSWER:    Defendants generally admit that Defendants manufacture or offer for sale animal food products.  Defendants deny all remaining allegations contained in paragraph 79.**

80.     At the time Defendants marketed, sold, and distributed Defendants' Product for use by Plaintiff SIMS, Defendants knew of the purpose for which Defendants' Product was intended and impliedly warranted Defendants' Product to be of merchantable quality and safe and fit for such use.

**ANSWER:     Defendants generally admit that Defendants manufacture or offer for sale animal food products.  Defendants deny all remaining allegations contained in paragraph 80.**

81.     Plaintiff SIMS reasonably relied on the skill, superior knowledge, and judgment of Defendants as to whether Defendants' Product was of merchantable quality and safe and fit for its intended use.

**ANSWER:     Defendants have insufficient knowledge to either admit or deny the allegations contained in paragraph 81 and therefore deny same and request strict proof thereof.**

82.     Due to Defendants' wrongful conduct as alleged herein, Plaintiff SIMS could not have known about the risks and side effects associated with Defendants' Product until after ingestion by Plaintiff SIMS' dog, ABBY.

**ANSWER:     Defendants deny the allegations contained in paragraph 82.**

83.     Contrary to such implied warranty, Defendants' Product was not of merchantable quality and was not safe or fit for its intended use.

**ANSWER:     Defendants deny the allegations contained in paragraph 83.**

84.     As a direct and proximate result of Defendants' breach of implied warranty, Plaintiff SIMS. suffered damages as previously alleged herein.

**ANSWER:    Defendants deny the allegations contained in paragraph 84.**

85.    Defendants' aforementioned conduct was committed with knowing, conscious and deliberate disregard for the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages in an amount to be determined at trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

**ANSWER:    Defendants deny the allegations contained in paragraph 85.**

86.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

**ANSWER:    Defendants deny that Plaintiff' complaint should be certified as a class action. Defendants deny all remaining allegations contained in paragraph 86.**

## AS AND FOR A FIFTH CAUSE OF ACTION SOUNDING IN BREACH OF EXPRESS WARRANTY

87.    Plaintiff repeats and incorporates herein by reference the allegations made in the above Paragraphs.

**ANSWER:    Defendants re-plead and incorporate by reference their answers to paragraphs 1-86 of Plaintiff's class action complaint as and for their answer to paragraph 87, as if fully set forth herein.**

88.    Defendants expressly warranted that the Product was safe and well

accepted by dogs and cats and was safe for long-term use.

**ANSWER:    Defendants deny the allegations contained in paragraph 88.**

89.    The Product does not conform to these express representations because the Product is not safe and has high levels of serious, life-threatening side effects.

**ANSWER:    Defendants deny the allegations contained in paragraph 89.**

90.    As a direct and proximate result of the breach of said warranties, Plaintiff was damaged, and he is therefore entitled to damages as described herein.

**ANSWER:    Defendants deny the allegations contained in paragraph 90.**

91.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

**ANSWER:    Defendants deny the allegations contained in paragraph 91.**

## AS AND FOR A SIXTH CAUSE OF ACTION SOUNDING IN NEGLIGENCE

92.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

**ANSWER:    Defendants re-plead and incorporate by reference their answers to paragraphs 1-91 of Plaintiff's class action complaint as and for their answer to paragraph 92, as if fully set forth herein.**

93.    Defendants owed a duty to consumers of Defendants' Product, including the Plaintiff, to use reasonable care in designing, testing, labeling, manufacturing, marketing,

supplying, distribution and selling Defendants' Product, including a duty to ensure that Defendants' Product did not cause the dogs and cats ingesting the Product to suffer from unreasonable, unknown, and/or dangerous side effects.

**ANSWER:    Defendants deny the allegations contained in paragraph 93.**

94.    Defendants failed to exercise reasonable care in warning about, designing, testing, labeling, manufacture, marketing, selling and/or distributing of Defendants' Product and breached their duties to Plaintiff in that, and not by way of limitation, they did not warn of the known risks associated with the ingestion of Defendants' Product and did not exercise an acceptable standard of care, I.e., what a reasonably prudent manufacturer or seller would have known and warned about.

**ANSWER:    Defendants deny the allegations contained in paragraph 94.**

95.    Moreover, the product lacked sufficient warnings of the hazards and dangers to users of said Product, and failed to provide safeguards to prevent the injuries sustained by Plaintiff's dog, ABBY. Defendants failed to properly test Defendants' Product prior to its sale, and as a result subjected users to an unreasonable risk of injury when this Product was used as directed and recommended.

**ANSWER:    Defendants deny the allegations contained in paragraph 95.**

96.    Defendants additionally breached their duty and were negligent in their actions, misrepresentations, and omissions toward Plaintiff, in part, in the following ways:

        a.    Failed to exercise due care in designing, developing, and manufacturing Defendants' Product so as to avoid the aforementioned

risks to individuals using these products;

b.    Failed to include adequate warnings with Defendants' Product that would alert Plaintiff SIMS and other purchasers to its potential risks and serious side effects;

c.    Failed to adequately and properly test Defendants' Product before placing it on the market;

d.    Failed to conduct sufficient testing on Defendants' Product, which if properly performed, would have shown that Defendants' Product had serious side effects, including, but not limited to, death of the dog or cat;

e.    Failed to adequately warn Plaintiff that use of Defendants' Product carried a risk of other serious side effects;

f.    Failed to provide adequate post-marketing warnings or instructions after Defendants knew, or should have known, of the significant risks of ingestion by dogs and cats of Defendants' Product;

g.    Placed an unsafe product into the stream of commerce; and

h.    Was otherwise careless or negligent.

**ANSWER:    Defendants deny the allegations contained in paragraph 96, including all sub-paragraphs (a) through (h).**

97.    Defendants knew, or should have known, that Defendants' Product caused unreasonably dangerous risks and serious side effects of which Plaintiff would not be aware. Defendants nevertheless advertised, marketed, sold and/or distributed Defendants'

Product knowing of its unreasonable risks of injury.

**ANSWER:    Defendants deny the allegations contained in paragraph 97.**

98.    Defendants knew or should have known that consumers' dogs or cats, such as Plaintiff SIMS' dog, ABBY, would suffer injury and possible death as a result of Defendants' failure to exercise reasonable care as described above.

**ANSWER:    Defendants deny the allegations contained in paragraph 98.**

99.    Upon information and belief, Defendants knew or should have known of the defective nature of Defendants' Product, as set forth herein, but continued to design, manufacture, market, and sell Defendants' Product so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiff, in conscious and/or negligent disregard of the foreseeable harm caused by Defendants' Product.

**ANSWER:    Defendants deny the allegations contained in paragraph 99.**

100.    Defendants failed to disclose to the Plaintiff and the general public facts known or available to them, as alleged herein, in order to ensure continued and increased sales of Defendants' Product. This failure to disclose deprived Plaintiff SIMS of the information necessary for them to weigh the true risks of purchasing Defendants' Product against the benefits.

**ANSWER:    Defendants deny the allegations contained in paragraph 100.**

101.    As a direct and proximate result of Plaintiff SIMS' feeding Defendants' Product to their dog, ABBY, Plaintiff SIMS' dog, ABBY, suffered serious health problems

and ultimate death.

**ANSWER:   Defendants deny the allegations contained in paragraph 101.**

102.   By virtue of Defendants' negligence, Defendants directly, foreseeably and proximately caused Plaintiff SIMS' dog, ABBY, to suffer serious health problems and ultimate death. As a result, the imposition of punitive damages against Defendants is warranted.

**ANSWER:   Defendants deny the allegations contained in paragraph 102.**

103.   The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

**ANSWER:   Defendants deny the allegations contained in paragraph 103.**

104.   Defendants reserve the right to amend this answer and affirmative defenses in the event that information learned during discovery or in the progression of this case, provides it with reason to so amend this answer and affirmative defenses.

105.   Defendants demand a trial by jury.

WHEREFORE, Defendants respectfully request dismissal of Plaintiffs' claims against them, with costs and any other relief this Court deems just and proper.

## AFFIRMATIVE DEFENSES

Defendants Menu Foods Income Fund, Menu Foods Midwest Corporation, Menu Foods South Dakota, Inc., Menu Foods, Inc., Menu Foods Holdings, Inc., by their attorneys, pleading in the alternative and for their affirmative defenses hereby, state as

follows:

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs' Complaint fails to state a cause of action upon which relief may be granted and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## SECOND AFFIRMATIVE DEFENSE

Defendants assert that Plaintiffs cannot establish a prima facie case of entitlement to punitive damages on their fraud claim. Under Arkansas law, punitive damages are only available if the requisite showing is made; that is, if fraud is aggravated in the sense of being malicious, deliberate, and gross or wanton. *Gilmer v. Walt Disney Co.*, 915 F. Supp. 1001 (1996). Under Arkansas law, claims for punitive damages must be closely scrutinized. *Id.*

## THIRD AFFIRMATIVE DEFENSE

Defendants assert that the sole proximate cause of the injuries and damages alleged in the Plaintiff's Complaint was Plaintiffs' own conduct, and therefore, the Plaintiffs are entitled to take nothing by this lawsuit. Defendants assert that those injuries and damages alleged in the Plaintiff's Complaint were a direct and proximate cause of the Plaintiffs' own conduct, and therefore, if any Defendant or Defendants are found liable to the Plaintiffs for the trial of this cause, said monetary award should be reduced in an amount commensurate with Plaintiff's comparative fault.

## FOURTH AFFIRMATIVE DEFENSE

Defendants assert that Plaintiffs' conduct constitutes contributory. Defendants deny liability but assert their fault, if any, for the injuries and damages alleged, but if Defendants' fault is found to be less than the total attributable fault of the Plaintiffs, and to any Third-Party Defendant, who could have been sued by the Plaintiffs, Defendants shall only be severally liable for the Plaintiff's damages, if any, which may be awarded by a trier of fact.

## FIFTH AFFIRMATIVE DEFENSE

Defendants assert that Plaintiffs complaint should not be certified as a class action. Products liability actions are distinguishable from other mass personal injury cases since "No single happening or accident occurs to cause similar types of physical harm or property damage.  No one set of operative facts establishes liability." *In re Northern District of California Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 847 (C.A.9th, 1982).

## SIXTH AFFIRMATIVE DEFENSE

Defendants' products were not defective or unreasonably dangerous based on an alleged failure to warn, because at that the time of Plaintiffs alleged exposure there was no information available on the basis of which a reasonable manufacturer of pet food could have concluded that exposure to any internally containing material might be dangerous. As a matter of law, a manufacturer or distributor of a product is under no duty to warn of a prospective risk of harm in the absence of knowledge, actual, or constructive, of the risk arising from a foreseeable use of its own products.

## SEVENTH AFFIRMATIVE DEFENSE

Defendants deny that Plaintiffs sustained any injuries as a result of contact with or use of any product manufactured or sold by these Defendants and further states that any contact with Defendants' alleged products would be so slight that it would not be a substantial factor in causing or contributing to the cause of the injuries of which Plaintiffs now complain.

## EIGHTH AFFIRMATIVE DEFENSE

If Plaintiffs are found to have sustained injuries from products manufactured or distributed by Defendants products, then said exposure was de minimis and not the legal and proximate cause of Plaintiffs' injuries.

## NINTH AFFIRMATIVE DEFENSE

If Plaintiffs sustained injuries and damages alleged in Plaintiff's Complaint, which Defendants deny, such injuries resulted in whole or in part from the acts of one or more persons over whom Defendants have no control or right of control and Defendants are therefore entitled to a reduction of damages for comparative fault of others.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, were proximately caused by unforeseeable, independent, intervening or superseding events beyond the control and unrelated to the conduct of Defendants.  Defendants' actions and omissions, if any, were superseded by such unforeseeable, independent events.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' Complaint fails to allege sufficient facts to entitle Plaintiffs to an award of

exemplary or punitive damages.

## <u>TWELFTH AFFIRMATIVE DEFENSE</u>

With respect to each and every purported cause of action, Defendants' acts were at all times done in good faith and without malice.

WHEREFORE, Defendants respectfully request dismissal of Plaintiffs' claims against them, with costs and any other relief this Court deems just and proper.

Respectfully Submitted,

/s/Christy Comstock
Christy Comstock (AR #92246)
Robert L. Jones, III (AR #69041)
**Jones & Harper**
21 West Mountain, Suite 300
Fayetteville, AR 72701
(479) 582-3382
Fax (479) 587-8189

And

Edward B. Ruff
Michael P. Turiello
PRETZEL & STOUFFER, CHARTERED
One South Wacker Drive, Suite 2500

Chicago, Illinois 60606
(312) 346-1973

ATTORNEYS FOR DEFENDANTS, MENU
FOODS INCOME FUND, MENU FOODS
MIDWEST CORPORATION, MENU FOODS
SOUTH DAKOTA, INC., MENU FOODS, INC.
and MENU FOODS HOLDINGS, INC.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this _14_day of May 2007, electronically and by first class mail, postage prepaid to:


**Jason M. Hatfield**
Lundy & Davis, LLP
300 N College Ave Ste 309
Fayetteville AR 72701
Attorney for the Plaintiffs

/s/Christy Comstock_____
Christy Comstock